CAROLINE MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100343.  Promulgated May 1, 1941.

*W. A. Sutherland, Esq.,* and *B. F. Boykin, Esq.,* for the petitioner.
*J. Marvin Kelley, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: The only issue for our determination is whether or not petitioner is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936[1] for purposes of the surtax on undistributed profits. Petitioner contends that it was restricted in payment of dividends in the taxable year because of limitations imposed by its charter and by the agreement set forth in the minutes of the shareholders' meeting held January 19, 1934. It maintains that the shareholders' resolution was a written contract executed by petitioner within the purview of the statute. Respondent's position is that the minutes of the shareholders' meeting indicate a mere authorization to the elected trustees to carry into effect the oral agreement which

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* . \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \* \* \*

had been reached by the committee representing the bondholders and the shareholders.

Since the date of hearing of this proceeding the Supreme Court handed down its decisions in *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46, and *Crane-Johnson Co.* v. *Helvering*, 311 U. S. 54. In those cases the Supreme Court held that a corporate charter was not a contract within the meaning of section 26 (c) (1) of the Revenue Act of 1936. Petitioner's charter, therefore, is not a contract restricting payment of dividends and does not entitle petitioner to the credit granted by the statute. It thus becomes necessary that we consider petitioner's contention that the resolution adopted by the shareholders on January 19, 1934, was a written contract executed by petitioner.

In *Davison-Joseph Campau Realty Co.*, 41 B. T. A. 675, we held that a corporate bylaw is not a "written contract executed by the corporation" within the meaning of section 26 (c) (1). We reiterated our position in that case in *Atlas Supply Co.*, 43 B. T. A. 324. Recently, we held that an agreement between preferred and common stockholders which was recorded in the minutes of a shareholders' meeting was not a contract executed by the corporation. *Henry Mill & Timber Co.*, 43 B. T. A. 1073.

We are of the opinion that the agreement among stockholders, bondholders, and trustees which is recited in the corporate minutes of the shareholders' meeting of January 19, 1934, is not a written contract executed by petitioner. It does not appear that there was any intention that a contract be executed by petitioner at that time. The embodiment of the agreement in the minutes seems a mere recitation for the purpose of corporate records. Moreover, although petitioner's contracts were customarily signed by its president and secretary, these minutes were signed by the secretary and by the chairman of the meeting.

Nor does the fact that petitioner's board of directors, on February 8, 1934, approved the minutes of the shareholders' meeting of January 19, 1934, make the agreement a written contract executed by petitioner. The directors approved the minutes of the meeting which included the resolution here under consideration, but that approval can not transmute an oral agreement into a written one. The agreement among the bondholders, shareholders, and trustees was not a written contract.

We hold that the facts do not show a written contract executed by petitioner which restricted payment of dividends in the taxable year.

Reviewed by the Board.

*Decision will be entered for the respondent.*

Tyson, dissenting: I agree with the majority opinion in its holding that petitioner's charter is not a contract restricting the payment of dividends within the purview of section 26 (c) (1) of the Revenue Act of 1936.

However, I disagree with the holding in that opinion that the resolution adopted at the stockholders' meeting and thereafter approved by the board of directors did not constitute a written contract executed by petitioner restricting the payment of dividends under the cited section.

The majority opinion predicates its latter holding primarily upon the conclusion that the agreement between the petitioner and its bondholders was oral and that the embodiment of that oral agreement in the resolution set out in the minutes of the stockholders' meeting was a mere recitation for the purpose of corporate records; and the opinion seems also to imply that the latter holding might also be additionally based upon the fact that the minutes of the stockholders' meeting at which the resolution was adopted were signed by the chairman of that meeting rather than by the president of the corporation.

In my opinion, the embodiment in the resolution of the only oral agreement shown by the record, i. e., that between the bondholders' committee and the stockholders' committee, was not a mere recitation for the purpose of the corporate records, but constituted the only contract between the parties after its adoption; and I do not think that at the time of the adoption of the resolution it is correct to state, as is done in the majority opinion, that "it does not appear that there was any intention that a contract be executed by petitioner at that time."

The undisputed evidence, not all of which is shown in the majority opinion, discloses: That the bondholders' committee, with full authority to act for the bondholders, and a committee of the stockholders met together and made an oral agreement containing the same terms and provisions as are set out in the resolution in question; that after this oral agreement was made the bondholders' committee appeared in person at the meeting of the stockholders on January 19, 1934, for the purposes of making a report of the petitioner's defaults in payment of interest on its bonds and of requesting the stockholders to confirm the oral agreement made by the two committees for the protection of the bondholders; and that after the report of the bondholders' committee to the stockholders' meeting, and while that committee was present, the resolution in question was adopted in response to the request of that committee.

Under the facts as above stated it seems clear that at the time of the adoption of the resolution it was the intention of the bondholders' committee and the stockholders to execute the contract here in question and it seems equally clear that the contract was so executed by incorporating in the written resolution the terms of the precedent oral

agreement between the bondholders' committee and the stockholders' committee.

From all the facts and attendant circumstances, I can reach no conclusion other than that the oral agreement previously made by the two committees became merged in the written resolution under the elementary principle stated in 17 Corpus Juris Secundum, p. 872, § 381, as follows: "* * * in the absence of fraud, a written contract merges all prior and contemporaneous negotiations on the subject, together with all prior oral contracts * * *."

In concluding that the oral agreement made by the two committees was merged in like provisions of the resolution, I do so by applying the principle that a resolution embracing the terms of an oral request or proposal made by the other party to an agreement, or embracing terms orally accepted by or acquiesced in by such other party, constitutes a binding obligation and a written contract of the corporation when adopted by it and spread in writing upon its minutes. This principle is established by the following authorities: *Schlens* v. *Poe*, 97 Atl. 649 (Md.) ; *Sears* v. *Kings County El. R. Co.*, 25 N. E. 98 (Mass.) ; *Bankers Trust Co.* v. *Economy Coal Co.*, 276 N. W. 16 (Iowa) ; *Lafean* v. *American Caramel Co.*, 114 Atl. 622 (Pa.) ; *Sotter* v. *Coatesville Boiler Works*, 101 Atl. 744 (Pa.) ; *Alabama Lime & Stone Co.* v. *Adams*, 119 So. 853 (Ala.) ; cf. *Altavista Cotton Mills* v. *Lane*, 112 S. E. 637, 641, (Va.) ; *Indiana Bermudez Asphalt Co.* v. *Robinson*, 63 N. E. 797 (Ind.) ; *Beach & Clarridge Co.* v. *American Steam G. & V. Mfg. Co.*, 88 N. E. 924 (Mass.) ; *Mountain Waterworks Const. Co.* v. *Holme*, 113 Pac. 501 (Colo.).

The implication in the majority opinion that its holding might be additionally based upon the fact that the minutes of the meeting of the stockholders were signed by "E. T. Steed, Chairman" of that meeting rather than by the president of the corporation is, in my opinion, unsound. The minutes show that Steed was duly selected as chairman thereof and in signing the minutes with the secretary was properly performing the functions of such a position. The minutes were binding on the corporation, under the controlling principle as stated in 18 Corpus Juris Secundum, pp. 1233, 1234, §545 : "While provision is frequently made that the president shall preside at stockholders' meetings, where no provision is made, a chairman may be selected by the stockholders."

In my opinion the resolution in question constituted a written contract executed by the petitioner corporation which restricted payment by it of dividends in the taxable year.

ARUNDELL, MURDOCK, BLACK, LEECH, and HARRON agree with this dissent.