**CAROLINE MILLS v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10069.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1942.

SIBLEY, Circuit Judge, dissenting.

W. A. Sutherland and Joseph B. Brennan, both of Atlanta, Ga., for petitioner.

Hubert L. Will, Sewall Key, J. Louis Monarch, and Gerald L. Wallace, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Vernon F. Weekley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The only question presented by the petition for review is whether the taxpayer is entitled to a credit under § 26(c) (1) of the Revenue Act of 1936 in computing its liability for the surtax imposed on undistributed profits by § 14 of the Act. §§ 14, 26(c) (1), 26 U.S.C.A. Int.Rev.Acts, pages 823, 836.

The Board of Tax Appeals, with six members dissenting, refused to allow the credit, holding that the facts failed to show a written contract executed by the petitioner which restricted payment of dividends in the tax year 1936. The Board's findings and opinion are reported, Caroline Mills v. Commissioner, 44 B.T.A. 379.

Caroline Mills is a Georgia corporation engaged in operating a cotton mill at Carrollton, Georgia. On May 1, 1928, it executed a deed of trust covering its properties to secure the issue of $50,000 first mortgage bonds. Adverse business conditions forced the mill to cease operation for several months in 1933, and the company was unable to pay the interest due on outstanding bonds. On March 22, 1933, the bondholders held a meeting for the purpose of considering the company's financial condition, and to discuss payment of the interest due May 1, 1933. At this meeting the bondholders appointed a committee with full power to act for their protection and for the best interests of the company's shareholders and bondholders.

On May 22, 1933, at a called meeting, the company's board of directors voted to incorporate the minutes of the bondholders' meeting into the regular minutes of the board of directors. The board also voted to accept the report of the bondholders' committee, which report stated that the committee had secured authority to withhold requests for the payment of bond interest due May 1, 1933. The committee also requested the resignation of the existing trustee. The board of directors joined in this request, and the trustee resigned.

At a meeting of the company's stockholders held on January 19, 1934, E. T. Steed, L. J. Brock, and S. C. Boykin, were elected trustees to succeed the Trust Co. of Georgia which had resigned. A resolution was then adopted providing that the trustees: " * * * be further empowered to carry out the agreement made with the stockholders and the bondholders, between the Committee representing the bondholders and the Committee representing the stockholders, to-wit:

"That the bondholders agree that a deed may be executed to these Trustees, creating them Trustees for the bondholders. The bondholders agree that these Trustees not push at the present time for the interest due on said bonds, nor to foreclose the same on the Mill until further order to do so by a majority of the bondholders, in writing, given to these Trustees named above.

"The stockholders agree with these Trustees and the bondholders, that in consideration of this agreement made by the bondholders to them, that neither the stockholders nor the directors of the mill will pay out any dividends, nor employ any additional officers, at any salary, until authorized to do so by the Trustees, and that in no event shall any dividends be paid in any manner, until the past due interest on the bonds has been fully paid."

The agreement referred to in the above quoted resolution was an oral agreement. The minutes of the stockholders' meeting were signed by "E. T. Steed, Chairman" (of the meeting) and "P. L. Shaefer, Secretary". Contracts entered into by the petitioner are usually signed by both the president and secretary of the corporation. On this point P. L. Shaefer, secretary-treasurer of the corporation since its organization, testified:

"There was a verbal agreement between the two committees that they would not pay these dividends and these minutes of January 19, 1934, are a record of what took place between the bondholders' committee and the stockholders' committee.

"The agreement was not signed by any of the officials of the Petitioner. There was no agreement signed on paper, no written agreement. There was nothing more than the written minutes. It was purely a verbal agreement.

"I have been Secretary-Treasurer of the petitioner since it was organized in 1928. With respect to the execution of contracts involving the petitioner, these contracts are usually signed by Mr. Boykin as president and by me as secretary. That is the usual custom.

*    *    *    *    *    *

"The agreement restricting the payment of dividends was not executed by Mr. Boykin and by me in our official capacities. It was not in writing."

Steed, Brock, and Boykin assumed their duties as trustees on January 19, 1934. At the regular monthly meeting of the petitioner's board of directors held on February 8, 1934, the board read and approved the minutes of the stockholders' meeting of January 19, 1934.

The Commissioner determined that for the tax year 1936 the taxpayer's adjusted net income and undistributed net income was $17,065.51. On its return for the taxable year the petitioner claimed a credit under § 26(c) (1) for the full amount of $17,065.51, alleging that there was a contract restricting payment of dividends. The Commissioner disallowed the credit and, after allowance of the specific credit granted by § 14(c) of the Revenue Act of 1936, determined that petitioner's undistributed net income subject to the surtax was $13,772.06, and accordingly made a deficiency assessment for $2,839.74 against the taxpayer.

Decision must turn upon § 26(c) (1) which provides that in computing the surtax on undistributed profits the corporation shall be relieved from such tax on undistributed profits which could not be distributed as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

The petitioner has abandoned the contention made before the Board that it was entitled to the credit because of charter limitations restricting payment of divi-

dends in the taxable year. It here urges that under the facts shown the resolution of the stockholders approved by the board of directors was a written contract within the purview of the statute. The Commissioner takes the position that the minutes of the shareholders' meeting was nothing more than an authorization to the trustees to carry into effect the oral agreement which had been reached by committees representing the shareholders and the bondholders, and that the resolution was not in the form of a contract and was never properly executed as a contract by the officers of the corporation or the representatives of the bondholders.

Section 26(c) (1) grants a credit in the nature of a specially permitted deduction and must be strictly construed. There would be strength in the petitioner's contention that the resolution was a "written contract" within the meaning of the statute but for the fact that in Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, and Crane-Johnson Co. v. Helvering, 311 U.S. 54, 61 S.Ct. 114, 85 L.Ed. 35, the Supreme Court in considering the application of the section strictly construed the credit and pointed to its narrow application saying [311 U. S. 46, 61 S.Ct. 111, 85 L.Ed. 29], "The natural impression conveyed by the words 'written contract executed by the corporation' is that an explicit understanding has been reached, reduced to writing, signed and delivered. * * * Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which 'expressly deals with the payment of dividends.'" We think the resolution of the stockholders reciting the oral agreement fails to measure to a "written contract" so as to meet the requirement of the statute as it is construed in the above cases. Cf. Atlas Supply Co. v. Commissioner, 10 Cir., 123 F.2d 356.

The Commissioner and the Board of Tax Appeals properly disallowed the credit claimed by the petitioner. The petition is denied and the decision of the Board is affirmed.

SIBLEY, Circuit Judge (dissenting).

The Secretary-Treasurer further testified: "These committees met with the stockholders on Jan. 19, 1934, and reported to the stockholders what the committees had agreed upon. That was recorded in the minutes, and the minutes were signed by the corporation. The bondholders have kept the agreement and have so far failed to foreclose. The stockholders have kept their agreement and operated the mill to the best of their ability. The bondholders' committee reported to the stockholders' meeting on Jan. 19, 1934, for the purpose of having the petitioner (the corporation) confirm the agreement the two committees had made. It was confirmed in these minutes."

The oral agreement between the two committees became a written one when it was recorded on the corporation's minute book. The minute is not a mere recital of what the committees did, but uses words of present contract. "The bondholders agree" not to press for interest due nor to foreclose on the mill; "the stockholders agree with these trustees and the bondholders that in consideration of their agreement * * * neither the stockholders nor the directors of the mill will pay out any dividends * * until authorized so to do by the trustees, and that in no event shall any dividends be paid in any manner until the past due interest on the bonds has been fully paid." This minute constituted the written memorial of the contract, superseding all prior negotiations. The new trustees were also parties to it and were present and received their° trust deed at the same time.

There are two things that may be urged against the due execution of this contract by the corporation. First, it is not the function of the stockholders, but of the directors, to make the ordinary contracts of the corporation. Georgia Code, § 22–709; Henderson Lumber Co. v. Chatham Bank & Trust Co., 33 Ga.App. 196, 197, 125 S.E. 867; 19 C.J.S., Corporations, §§ 742, 1000. But this was an extraordinary contract, affecting the policy and existence of the mill, and stockholders as the owners of the mill might well assume to act upon it. Second, the stockholders' meeting was a special one, called only to elect new trustees, and all stockholders do not appear to have been present. Both these objections are fully met by the fact that at the next regular meeting of the directors, their minutes show this: "The President reported what had happened at the stockholders' meeting of Jan. 19, 1934, and the minutes of that meeting were read and approved by the directors." This minute is signed by the

President and Secretary of the Corporation. This constituted a full ratification and adoption by the directors of what the stockholders had attempted to do. 19 C.J. S., Corporations, §§ 1016, 1017. The minute of the stockholders' meeting became by reference a part of the minute of the directors' meeting, and the written contract in the former became the contract of the directors, authenticated by the signatures of the President and Secretary. Although in the contract no specific time of indulgence was stipulated, indulgence was enjoyed throughout the tax year, and the interest not having been paid, the taxpayer was bound not to pay out any dividends. See Loewenherz v. Weil, 33 Ga.App. 760, 767, 127 S.E. 883; Morrow v. Southern Exp. Co., 101 Ga. 810, 812, 28 S.E. 998. 17 C.J.S., Contracts, §§ 103, 104.

I therefore think there was a written contract executed by the corporation before May 1, 1936, expressly dealing with the payment of dividends, which would have been violated by paying dividends in the tax year, and a credit was due under Section 26 (c) (1).