## FLORENCE COTTON MILLS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10091.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1942.

H. A. Bradshaw, of Florence, Ala., for petitioner.

Arthur A. Armstrong, J. Louis Monarch, and Gerald L. Wallace, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

Florence Cotton Mills, with reference to the surtax on undistributed profits earned in its fiscal year ending August 31, 1937, claimed a credit under Sect. 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev. Acts, page 836, because it could not have distributed its profits without violating a written contract with Reconstruction Finance Corporation, which contract was asserted to have been executed by the taxpayer prior to May 1, 1936. This claim was denied by the Commissioner, and his decision was upheld by the Board of Tax Appeals.

The taxpayer on July 2, 1935, signed and filed with Reconstruction Finance Corporation a written application for a loan of $125,000. The application contained this promise: "So long as applicant shall be indebted to R. F. C. applicant will not without the prior consent of R. F. C., * * * declare or pay any dividend * * *;" and this provision: "This application, as hereafter amended or supplemented, together with all conditions imposed by and all agreements required by or entered into with or for the benefit of R. F. C. in connection with the making of the loan hereby applied for and the

note or notes of applicant evidencing such loan (all of which are incorporated herein and made a part hereof) shall constitute a contract between applicant and R. F. C. * * * Such contract shall become binding upon the parties only when all of any part of the loan applied for is paid to applicant by check or draft or unconditionally credited to the account of applicant, and only with respect to the amount so paid or credited." In answer to the application, R. F. C. on February 26, 1936, mailed applicant copy of a resolution which authorized a loan of $100,000 on certain conditions, among them being the giving of a note on a certain form, the making of a certain mortgage, and the procuring of $35,000 additional assets by applicant and the expending of said sum in plant improvements satisfactory to R. F. C. On March 7, 1936, applicant's directors met and resolved that it was desirable to borrow $100,000 from R. F. C. and to amend its charter so as to issue $35,000 of preferred stock, and called a meeting of stockholders to act on the matter. On April 24, 1936, R. F. C. consented that dividends not exceeding five percent might be paid on the proposed $35,-000 of preferred stock. The stockholders met April 27, 1936, and authorized the borrowing of $100,000 from R. F. C. on note on such conditions as R. F. C. should require, authorized the giving of a mortgage on all applicant's property, and the issue of $35,000 preferred stock. The loan note was not executed until September 1, 1936, and the amount of the loan was paid over to applicant September 25, 1936.

■ ■ During the tax year beginning September 1, 1936, there was a written contract executed by the taxpayer which dealt expressly with the payment of dividends and which would have been violated —at least after September 25—by paying dividends not consented to by R. F. C. The sole question argued is whether the contract was executed by the taxpayer prior to May 1, 1936. The paper which contains the promise not to pay dividends was indeed executed prior to that date, but it was not a contract. It was a proposal to contract. It was not accepted as made, but R. F. C. modified it by proposing a lesser amount, and requiring other things done. Until these modifications were agreed to, and the agreement communicated to R. F. C., there was not the meeting of minds necessary to make a contract. The directors and stockholders took action April 27 which indicates they were preparing to agree, but when and how they communicated their agreement does not appear. But if we suppose that an agreement in writing was reached prior to May 1, there is still to be considered the above quoted stipulation in the application which remained as the basis for the negotiations as to when the contract reached should be binding, to-wit: "Only when all or a part of the loan applied for is paid to applicant." Until then, either party could withdraw at will. The preceding words: "This application, as hereafter amended and supplemented * * * and the note of applicant evidencing such loan * * * shall constitute a contract", do not mean that the application is a contract from its date, for the amendments and supplements mentioned and the note for the loan did not then exist; but the meaning is that after the contract shall become binding by the paying of the money, all the mentioned papers shall be parts of the contract of lending. The taxpayer had not executed a contract prior to May 1, 1936, but only an application for a loan. Its note, which was a part of its final contract, was not executed till Sept. 1, 1936; and the agreement of the parties was that even after the note was given the contract to borrow was not binding until the money was paid over. This statute is to be strictly construed. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29. The Board did not err in denying the credit claimed. Morgan Mfg. Co. v. Commissioner, 4 Cir., 124 F.2d 602; Bethlehem Silk Co. v. Commissioner, 3 Cir., 124 F.2d 649.

Affirmed.