## COMMISSIONER OF INTERNAL REVENUE v. DULUP OIL CO.

### No. 9906.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1942.

Edward First, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

J. A. Gooch, of Fort Worth, Tex., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

In determining the taxpayer's liability for surtax on undistributed profits for the years 1936 and 1937, the Board of Tax Appeals allowed credits claimed under § 26(c) (2) of the Revenue Act of 1936. § 26(c) (2), 26 U.S.C.A. Int.Rev.Acts, page 836.

Section 26(c) (2) provides that in computing the surtax on undistributed profits a credit be allowed in an amount equal to the portion of the earnings and profits of the taxable year which "is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt * * *."

The question here presented is whether the taxpayer had a contract *expressly dealing with the disposition of earnings and profits of the taxable years*. The material facts touching this point are these: The taxpayer, Dulup Oil Company, borrowed $55,000 from the Fort Worth National Bank and $46,000 from another corporation for the purpose of purchasing a working interest in an oil and gas lease. The bank's loan was evidenced by a ninety-day note secured by a deed of trust on Dulup's interest in the lease and a chattel mortgage on all personal property situated on the property.

Terms of repayment of the loan were set forth in a letter written by the bank and accepted by Dulup Oil Company. The letter was dated November 23, 1935, and provided in part: "We have taken your $55,000 ninety-day note containing the usual 10 per cent. attorney's fee clause; but it is understood that beginning with the receipt of your first pipe line runs, about the 15th day of December, 1935, you will pay us $3,000, plus interest for thirty days, and a like $3,000 payment, plus interest for the preceding thirty days on the unpaid balance, shall be made on the same day of each month thereafter." It was further agreed by the bank that if payments were made as above provided it would "renew the unpaid balance each 90 days not to exceed eighteen months in all upon

the same terms and conditions and rate of interest."

The deed of trust given to secure the note provided that "any pipe line company or other purchaser of such oil and gas or other minerals may pay the proceeds thereof and therefor to first party [Dulup] until such purchaser or purchasers shall have been notified in writing by The Fort Worth National Bank to pay such proceeds to it * * *."

During the years in question the taxpayer owned no income producing property other than the oil and gas lease mentioned above. All proceeds from the sale of oil were received by it, and out of these proceeds it paid the operating expenses and made payments to the bank of $31,750 in 1936, and $24,000 in 1937.

Taxpayer contends that the contract letter of November 23, 1935, contains language clearly indicating that the parties "contemplated and agreed" that the funds required for the discharge of the debt would be derived from the proceeds of the oil produced by the property; that this letter and the deed of trust constitute contracts which expressly deal with the disposition of earnings and profits of the taxable years; and that the Board, therefore, properly allowed the credits claimed under § 26(c) (2). The Commissioner on the other hand contends that the contracts contain no provision expressly dealing with the disposition of earnings and profits of the taxable years as required by the statute.

Section 26(c) (2) grants a credit in the nature of a specially permitted deduction and must be strictly construed. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. A taxpayer claiming the credit must establish that the precise language of the statute has been met. This the respondent has failed to do. The deed of trust and the contract letter made no express reference to the disposition of earnings of the taxable years. The fact that the parties might have understood and contemplated that the payments were to be made out of proceeds from oil runs, and the further fact that the payments were actually so paid is not sufficient to bring the transaction within the purview of § 26(c) (2). This section deals not with the intentions, contemplations, and unexpressed understandings of the contracting parties, but

confines the special credit to narrow limits and provides that there must be a written contract which contains a provision "expressly", not impliedly, dealing with disposition of earnings and profits of the taxable year. This requirement of the statute was not met, and the Board erred in allowing the credits. C. C. Clark Inc., v. United States, 5 Cir., 126 F.2d 292, decided March 3, 1942; Helvering v. Moloney Electric Co., 8 Cir., 120 F.2d 617.

The decisions of the Board of Tax Appeals are reversed and remanded.