## PHEBUS OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10365.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1943.

Robert Roberts, Jr. and H. C. Walker, Jr., both of Shreveport, La., for petitioner.

William A. Clineburg, Sewall Key, and Samuel H. Levy, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

What is for decision here is whether payments petitioner made in 1936 and 1937, to the Arkansas Gas Company and the Ohio Fuel Oil Company pursuant to the provision[1] of a written contract dated December 29, 1921, between Penn Wyo Trustees, the sole owners of its stock, and those two companies, entitled petitioner to the credit against income allowed by Sec. 26(c) (2), Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836[2] for monies paid in discharge of a debt within the meaning of that section. The

---

[1] "All profits of the operating companies shall be used to reduce such loans until they are all repaid. All net profits of the operating companies shall be paid to first parties and by them distributed as hereinafter set forth."

[2] "Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*　　\*　　\*　　\*　　\*

"(c) Contracts Restricting Payment of Dividends.

\*　　\*　　\*　　\*　　\*

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

commissioner determined that they did not, and the Board affirmed, on the ground that the contract under which the payments were made was not, as required by the section, executed by petitioner.

Petitioner is here insisting that, though it did not sign the contract and in the sense of affixing its name to it, it did not execute it, this is merely quibbling since the undisputed facts show that the contract was signed with the purpose and intent that petitioner and the other companies created by Penn Wyo would carry it out.

Respondent contests this and urges further that if this be conceded, petitioner would be no better off for (1) the contract under which the payments were made does not, as is essential under the section, require that a portion of petitioner's earnings and profits of the taxable year be paid within the taxable year in discharge of the debt; (2) petitioner has failed to show that amounts paid were to the extent of the credits claimed paid within the year; and (3) the amounts paid were paid not in discharge of a debt but as returns on a capital investment or speculation into which Arkansas and Ohio had entered as joint adventurers with Penn Wyo.

These questions were not passed upon by the Board, and since we agree with the Board that petitioner did not execute the contract, we pass without discussion the commissioner's other contentions. As shown by the facts summarized in the margin,[3] petitioner was from the beginning a corporate creature of Penn Wyo Trust, and, as such, was never anything more than one of the pawns with which Penn Wyo and Arkansas and Ohio played the speculative game in which they had contracted to engage. The petitioner makes out of this that since it is clearly established that it was an agency of the trust through which the contract was to be performed, it must be regarded as a party to the contract, but this will not do for creature though it was, petitioner was a separate corporate entity, and Penn Wyo Trust, having elected to create it, was bound by all the tax consequences that attended its creation. One of these consequences was that a contract executed by the trustees could not be said either in law or in fact to be a contract executed by the corporation, and that since the tax credits

3 By an agreement dated April 10, 1920, Penn Wyo Trust was formed to prospect for oil and gas. On July 1, 1920, petitioner and Atlantic were organized by the trust which owned their entire capital stock, to hold applications, permits and leases. Before the end of 1921, the trust, having exhausted its funds, negotiations were begun for additional capital, with the result that on December 20, 1921, Arkansas Natural Gas Co. and Ohio Fuel Oil Co., as first parties, and the Trust, as second party, executed the agreement on which petitioner relies. It provided that all permits and leases which the trust owned (either directly or through ownership of the stock of the two companies) were to be transferred to operating companies in which the trust would own all the stock. Arkansas and Ohio were to take over the management of these companies and were to loan or advance the trust all monies necessary to finance their operations. The trust in turn was to make advances to the operating companies to be evidenced by notes and open accounts, and the trust was to assign them to Arkansas and Ohio as security for their loans and advances to the Trust. All profits of the operating companies were to be used to reduce the loans from the trust and profits were to be paid to Arkansas and Ohio for application against their loans and advances to the trust until they were fully repaid, and, thereafter, Arkansas and Ohio were to retain 60 percent of the net profits and pay over the remaining 40 percent of the trust. Neither the trust nor the trustees were to be liable for the loans, for their payment Arkansas and Ohio to look solely to the net profits of the operating companies. Three new corporations were formed, and all their capital stock was owned by the trust. All the permits and leases not owned by the petitioner or the Atlantic were transferred by the trustee to one or another of the five companies. Pursuant to the contract, Arkansas and Ohio assumed control of the five operating companies, including petitioner, and advanced substantial sums of money during succeeding years for development and operation of the properties, and there were heavy unpaid balances in 1935, 1936 and 1937. None of the operating companies had any net income in 1936 and 1937 except petitioner. Though petitioner's net income for each of these years was respectively $16,359.21 and $14,436.-87, it paid on the unpaid balance $20,-000 in 1936 and $30,000 in 1937, and in its returns for the calendar years claimed credits in the years in question respectively, of $13,277.80 and $12,908.81.

claimed are allowed to corporations only upon contracts they themselves have executed, petitioner's failure to execute the contract stands as an insuperable barrier to its claim. If the matter is looked at simply, and as a person in the street would look at it, it certainly could not be said of a contract, which petitioner neither signed, nor directed, or authorized other persons to sign for it, that petitioner had executed it. If looked at less simply on the theory that though it did not physically execute it, the contract was signed for it with the intention that it would execute it in the sense of carrying it out, petitioner stands no better. For Penn Wyo, in executing the contract, was neither the agent of, nor did it in any sense execute it for, petitioner. Penn Wyo was the principal, petitioner was the agent, and it is a new and strange doctrine that the contract of a principal which he expects to carry out through his agents may be said to have been executed by the agent merely because the agent performs the part in it which by the contract his principal agreed he would perform. The statutes under which petitioner seeks the allowance of credits is plainly and simply expressed. It must be strictly complied with. Its benefits cannot be extended by construction.[4] What, and all that has occurred here is that the trust estate, owner of the stock of corporations, created and to be created, contracted with others for the management of those corporations and the advancement of monies in their operation and development under a contract whose terms bound the profits from the operation to the repayment of the sums advanced, and, that outlay repaid, to be divided in the proportion of sixty to forty between Arkansas and Ohio and Penn Wyo Trust. The substance of the contract then was a development arrangement between Penn Wyo and Arkansas and Ohio, the benefits of which were to flow not to the corporations, Penn Wyo's creatures, but to the parties to the contract, Penn Wyo, Arkansas and Ohio. The contract was therefore, not made by nor for the benefit of the corporations but by and for the benefit of the trust, and the fact that petitioner has, as Penn Wyo agreed in the contract would be done,

made payments to Arkansas and Ohio is without tax significance here. The Board's order was right. It is affirmed.

---

[4] Helvering v. Ohio Leather Co., 63 S. Ct. 103, 87 L.Ed. —, Nov. 9, 1942; Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; Atlantic Co. v. Commissioner, 5 Cir., 129 F.2d 87; Commissioner v. Dulup Oil Co., 5 Cir., 126 F.2d 1019; Caroline Mills v. Commissioner, 5 Cir., 126 F.2d 857.