## HOUSTON COTTON EXCHANGE BLDG. CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10189.

Circuit Court of Appeals, Fifth Circuit.

Feb. 27, 1943.

L. E. Blankenbecker and Charles Dillingham, both of Houston, Tex. for petitioner.

Maryhelen Wigle, J. Louis Monarch, and A. F. Prescott, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. U. S. Atty., J. P. Wenchel, Chief Counsel, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The Commissioner determined, and the Board affirmed,[1] that payments the Petitioner made on its debt in its fiscal year 1938 did not entitle it to a Section 26(c) (2) credit deduction.[2] Agreeing with peti-

[1] 45 B.T.A. 53.

[2] "Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

✻        *        *        *        *

"(c) Contracts Restricting Payment of Dividends.

*        *        *        *        *

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which pro-

vision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936." Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836.

tioner that the payments in question were made out of the earnings and profits of the taxable year; and that they were made pursuant to a provision of a written contract executed by the corporation requiring them to be paid within the taxable year in discharge of a debt; Commissioner and Board disallowed them because the trust indenture under which they were paid bore a February 1, 1937 date, instead of a date prior to May 1, 1936, as required by the section. Petitioner fully recognizes the binding force of the critical date provision of the statute, but it points out that the 1937 indenture and bonds were executed to take up bonds issued under an indenture dated in 1923, which, as supplemented in 1933, makes substantially the same debt paying requirements, and insists that not 1937 but 1923 and 1933 are the controlling dates here. The crux of the contention here then is whether the Board was right in holding that the 1923 indenture and supplement was no longer in effect and that the 1937 indenture, under whose terms the payments were made, constituted a completely new contract.

The Board's opinion sets out the material facts quite fully. Summarized they are: In 1923, petitioner issued $1,000,000.00 of first mortgage bonds, bearing interest at 6 percent and secured by a mortgage and deed of trust to St. Louis Union Trust Company, as trustee. Among its provisions, the first mortgage contract required petitioner to set aside annually its earnings and profits to retire the first mortgage bonds until the indenture had been reduced to $750,000.00, and this was done. As of June 30, 1933, there were outstanding first mortgage bonds in the amount of $530,000.00, and a supplemental indenture was executed extending their maturities to February 1, 1938, and in addition providing that all surplus revenues after payment of interest and taxes should be paid over to the trustee annually to be used to retire the first mortgage bonds. Except as modified by this supplement, the 1923 indenture remained in full force and effect. There was, however, no provision in either the 1923 first mortgage or the 1933 supplement especially prohibiting and restricting the payment of dividends. On February 1,

1937, when there remained outstanding and unpaid $409,000.00 principal of the first mortgage bonds, petitioner, making arrangements with four Houston banks to loan it the money, called and retired the first mortgage bonds and executed as of that date an indenture to the South Texas Commercial National Bank of Houston, as Trustee, to secure $500,000.00 of new first mortgage bonds, carrying 4½ percent interest, issued to the four banks. The amount loaned in excess of that used to retire the first mortgage bonds was used to pay interest on second mortgage bonds. The new trust indenture dated February 1, 1937, was as to debt retirement substantially similar to that of 1923 and the 1933 supplement with one material difference that it contained a provision expressly prohibiting payment of dividends until all first mortgage bonds were fully paid off and discharged. The 1937 indenture also contained a provision stating that the intent and purpose of the paragraph calling for the setting aside of all surplus earnings and profits to retire the bonds was to "continue, renew and carry forward in full force and effect all of said terms and provisions of said first lien deed of trust (1923) as amended * * * setting aside as security for the payment of all outstanding and unpaid first lien bonds all net earnings after the payment of interest and taxes and the company's agreement that no dividends shall be paid until all of the outstanding bonds are fully paid".

The statute under which petitioner claims the credit is quite precisely worded, and, without varying, the Supreme Court and the Circuit Courts of Appeals[3] have held that each requirement of the section is an essential of the credit and must be not substantially but exactly complied with. The binding quality of the requirement as to the execution date is specifically emphasized by the decision of this court in Florence Cotton Mills v. Commissioner, 5 Cir., 126 F.2d 1017. If the case here were like those dealt with in Commissioner v. Haskelite Mfg. Corp., 7 Cir., 128 F.2d 902, and Commissioner v. Struthers, 6 Cir., 132 F.2d 995, the mere extension of the original bond obligation or a mere modification of it after the critical date, petitioner would

3 Helvering v. N. W. Steel Mills, 311 U. S. 46, 61 S.Ct. 109, 85 L.Ed. 29; Helvering v. Ohio Leather Co., 63 S.Ct. 103, 87 L.Ed. —; Clark, Inc., v. United States, 5 Cir., 126 F.2d 292; Commissioner v. Dulup Oil Co., 5 Cir., 126 F. 2d 1019; Atlantic Co. v. Commissioner, 5 Cir., 129 F.2d 87; Phebus Oil Co. v. Commissioner, 5 Cir., 134 F.2d 217.

be able to maintain that the original contract still governed the debt and payments, but the 1937 indenture and bonds are not mere extensions of the old debt and contract. They in form and in fact evidence a new contract and new debts, new in amount, new in form, new as to interest and new as to creditors and trustee. The old obligations are in law and in fact extinguished and gone, the old indentures have played their part, have been satisfied and extinguished. To claim, as petitioner does, that the payments in question were made under the contract of 1923 and its 1933 extension is to completely overlook the fact that the old creditors have been satisfied and are gone, new creditors have arisen to take their places, the old trustee has been replaced by a new one, the old indenture has been satisfied and discharged and, though its material provisions have by express recital been carried into the new indenture, the new indenture is none the less a new one, creating new obligations as of a new date. The Board's order is

Affirmed.