**AMERICAN LIBERTY PIPE LINE CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10947.**

Circuit Court of Appeals, Fifth Circuit.

July 14, 1944.

Harry C. Weeks, of Fort Worth, Tex., and Clark G. Clinton, of Dallas, Tex., for petitioner.

Joseph S. Platt, Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bur.Int.Rev., and Charles E. Lowery, Sp. Atty., Bur.Int.Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Another "undistributed net income credit"[1] case, the taxpayer claimed, and the commissioner denied that it was entitled to "the credit provided in Sec. 26(c) relating to contracts restricting dividends".[2] The Tax Court was of the opinion that taxpayer had failed to prove the existence and execution by the taxpayer, before May 1, 1936, of the written contract required by the Statute, and that the earnings were paid in discharge of a debt incurred prior to that date. In an opinion[3] fully setting out, reviewing and analyzing the facts,[4]

---

[1] Rev.Act of 1936, § 14(a) 2, 26 U.S. C.A. Int.Rev.Acts, page 823.

[2] Rev.Act of 1936, § 26(c) 2, 26 U.S. C.A. Int.Rev.Acts, page 836.

[3] 2 T.C. 309.

[4] Briefly summarized, these are the controlling facts:

In 1935, three individuals who, through corporations owned or controlled by them, already owned oil gathering systems, determined to unify the systems already owned, and to acquire other properties and construct additional pipe lines, all to be owned when acquired by taxpayer, a Delaware corporation, to be formed by these promoters under the name American Liberty Pipe Line Company. To carry out the project it was necessary to obtain considerable outside money, and by correspondence with the Republic National Bank in Dallas occurring before taxpayer was formed, the promoters obtained a conditional commitment that the bank would purchase a $1,250,000 notes issue secured by a first mortgage and payable quarterly out of three-fourths

all of which are undisputed, it sustained the commissioner and denied the credits. It is quite clear from the statement set out in the margin, indeed, it is admitted by petitioner, that the payments for which it seeks credit, were actually made on and pursuant to the contract dated and executed June 18, 1936. Unless, therefore, this contract can by relation back be treated as in effect the agreement its promoters' made with the bank or the agreements petitioner made with the construction company and the supply houses, or at least as a carrying out, by mere renewal and continuance, of those arrangements and obligations, petitioner cannot have the credit it claims. For under the plain terms of the statute, the contract must have existed and been executed before May 1, 1936, and the obligated payments must be in respect of a debt incurred before that date. Taxpayer, however, insists that taking the facts as a whole and giving effect to the clearly established intention of the parties, it must be held: (1) that the contract came into existence as to it with the writing of the bank letters; (2) that though executed before petitioner's formation and by its promoters, it must be regarded as petitioner's contract; (3) that the debt which it dealt with and provided payment of was at least to the extent of the commitments made by petitioner to construction and supply companies, in existence prior to May 1, 1936, and (4) that the contract of June 18th was a mere renewal and extension thereof.

■■ It is thus quite plain that the difference between the taxpayer on the one hand and the commissioner and the Tax Court on the other does not arise out of any disagreement as to the facts. It arises out of the fact that the commissioner and the Tax Court are holding taxpayer to a strict compliance with the terms of the statute, while the taxpayer seeks to have it applied not precisely and in accordance with its terms but equitably and in accordance with what the taxpayer deems its paramount and overriding purpose. In such a situation, the burden on the taxpayer is greater than it can bear. For with only one or two aberrations, which have been soon corrected, wherever this section and its companion, the dividends paid credit section, have been up for decision, the courts have made it plain, as well where such construction advantaged,[5] as where it disadvantaged,[6] the

---

of the net earnings, the money to be available when conditions set out in the letters had been complied with. One of these was that the bank would not be obligated unless the construction program was fully and finally completed and presented to the bank for acceptance on or before June 30, 1936. On December 27, 1935, the taxpayer was incorporated, its promoters becoming its officers and directors. Thereafter contracts were made by the taxpayer for purchase of pipe and material and for the construction of the pipe line. In each instance the promoters gave the suppliers and contractors as security for payment assignments of portions of the money to be realized from the bank's commitment. On May 4, 1936, the bank's engineer reported 95 percent, and on May 30, full completion of the pipe line. On June 11, taxpayer wrote the bank referring to the commitment of November 13, 1935, and advising that all of the conditions for the making of the loan had been fully completed. On June 18, 1936, the directors authorized the making and execution of a deed of trust and chattel mortgage to the bank in accordance with the agreement between the bank and its promoters that the taxpayer would do so, and they were on that day executed. The proceeds of the loan were on the same day deposited to taxpayer's credit and checks were issued by it to the various parties it had contracts with for building and supplying the line in full payment of the amounts due them. Thereafter, under the terms of its agreement, of June 18th, petitioner made the payments for which it seeks credit, a part of them on the original June 18th loan, and some of them on a new loan which in 1938 it had secured from the bank of the Manhattan company for the purpose of taking up the balance on the old loan and securing new money. This loan recited that to the extent that the notes of the first loan were still outstanding it was in renewal and extension thereof.

5 Helvering v. Credit Alliance Co., 316 U.S. 107, 62 S.Ct. 989, 86 L.Ed. 1307; Sabine Transportation Co. v. Comm., 5 Cir., 128 F.2d 946.

6 Commissioner v. Dulup, 5 Cir., 126 F. 2d 1019; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; Clark v. United States, 5 Cir., 126 F.2d 292; Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113; Florence Cotton Mills v. Comm., 5 Cir., 126 F.2d 1017; Houston Cotton Exchange Bldg. Co. v. Comm., 5 Cir., 134 F.2d 323.

taxpayer, that the statute is plainly and clearly written, and that it must be applied as written. It may not be enlarged or restricted by a construction which, under the guise of giving effect to its supposed intent and purpose, adds to or takes away from its terms. Taxpayer, therefore, can take no profit from showing that its situation brings it within the equity of the statute, that is, within the general purview of its aims. It can prevail only by showing that it brings itself precisely within the statute's very terms. The Tax Court thought (1) that the arrangement made by its promoters could not be considered as having been executed by taxpayer, a corporation not then in existence; (2) that if it could be so considered, it was not a binding contract but merely a proposal for one;[7] (3) that if it could be considered as in existence and as a contract before May 1, 1936, taxpayer would still fail because no debt was created by it before May 1, 1936, but at most it was an arrangement for the creation of one which did not result in a debt until June 18, 1936. It rejected as wholly without merit taxpayer's contention that under Commissioner v. Haskelite, 7 Cir., 128 F.2d 902, the contract of June 18, 1936, was but a mere continuation and extension of the earlier obligations. It pointed out that the commitment its promoters had secured from the bank was neither a debt nor a contract, but merely a proposal for the creation of one, and that the construction and supply obligations taxpayer had assumed before May 1, 1936, were not in compliance with the statute. On evidence fully supporting the findings, it found that these debts for materials and services were not renewed and extended but were fully discharged; that a new debt to another and different creditor was incurred on June 18, 1936; and that it was on this debt that petitioner's earnings and profits of the taxable year were required to be and were paid.

We think it too clear for argument that the Court was right in its conclusion that the contract under which the actual payments were made was neither in existence nor executed by petitioner until after May 1, and because it was not, the claim for credit fails. We think it quite plain too that the Tax Court was right in holding that whatever might have been said of taxpayer's case, had its obligations for supplies and construction been simply renewed or extended, this did not occur here. On the contrary, there was a complete discharge of those debts with the making of a new contract with a new creditor, and our decision in Houston Cotton Exchange Bldg. Co. v. Comm., 5 Cir., 134 F.2d 323, is controlling.

In addition to its main point, taxpayer presented and lost below on, and it urges here, an additional contention that in the computation of its gross income it was entitled to value its inventory at market value rather than at cost. The Commissioner, insisting that the taxpayer had elected in 1936 to value its inventory on the basis of cost, and could not, in 1938, change this basis without obtaining permission to do so, prevailed below. These are the facts: On Nov. 30, 1936, taxpayer had on hand, unsold, certain crude oil, the market price of which on that date was the same as its cost. This was also true November 30, 1937, the close of taxpayer's second fiscal year, but in 1938, the market price had declined until it was below cost. For the years ending in 1936 and 1937, taxpayer, in valuing its inventories, used cost, stating in the questionnaire part of its returns for those years that cost was the basis it used in valuing its closing inventory. For the fiscal year ending in 1938, cost and market then being different, taxpayer stated that its inventories were valued "at cost or market whichever was lower". The Tax Court held that taxpayer had elected the cost basis and must stick to its election. Taxpayer does not deny that an election properly made would have bound it. It claims that because cost and market were the same in 1936 and 1937, and the regulation[8] allowed it to take cost or market,

---

[7] Bethlehem v. Comm., 3 Cir., 124 F.2d 649; Florence Cotton Mills v. Comm., 5 Cir., 126 F.2d 1017.

[8] "In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventory or basis of valuation so long as the method or basis used is substantially in accord with these regulations.

* * *" "Taxpayers were given an option to adopt the basis of either (a) cost or (b) cost or market, whichever is lower, for their 1920 inventories. The basis properly adopted for that year or any subsequent year is controlling, and a change can now be made only after permission is secured from the Commissioner." Art. 22(c)-2(2) Treasury Regulation 94.

whichever was lower, its statement that it had taken cost could not have been an election since for an election there must be choice, and cost and market being the same, there could have been no binding choice. We think that here, as in the case of its first contention, the taxpayer's attention is focused more on what might have been than on what was in fact done. The taxpayer might have elected market or, following the regulation, it might have stated, as it did in 1938, that it took cost or market whichever was lower. But what it might have done and what it did are entirely different things. The Tax Court has found, indeed, taxpayer admits, that it took cost. It cannot now say, after deliberately electing cost, that the election was a nullity because cost and market being the same, it would have been wiser for it to have stated its choice in broader terms. The judgment of the Tax Court was right. It is affirmed.