## ANGLIM v. ACME BREWING CO.

No. 10582.

Circuit Court of Appeals, Ninth Circuit.

June 26, 1944.

Rehearing Denied Aug. 11, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson, Bruce A. Low, and Melva Graney, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Norman A. Eisner, of San Francisco, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

In an action brought against the Collector of Internal Revenue to obtain a refund of income taxes representing surtax on undistributed profits, the district court gave judgment in favor of taxpayer. The Collector appeals.

Since 1934 the common stock of taxpayer "Acme Brewing Co.," a California corporation (formerly California Brewing Association of Southern California), has been owned by two corporations as follows: "Acme Breweries," formerly Cereal Products Refining Corporation, 80% and Bohemian Distributing Co., 20% thereof.

The two stockholder corporations entered into a contract with each other in December, 1934, in which each agreed to purchase an additional 10,000 shares of taxpayer's stock; Cereal Products agreed to accept 15,000 shares in satisfaction of a $150,000 indebtedness existing from taxpayer to it and to sell taxpayer cooperage, bottles and cases of the value of $100,000, and to lend taxpayer $350,000 and accept taxpayer's secured promissory note payable in five annual installments. In case taxpayer lacked sufficient surplus to pay any installment of the promissory note, Cereal Products and Bohemian Company were bound to advance an amount sufficient to meet the installment. Immediately following this item the contract contains the following language the significance of which will presently appear: "This provision is not made for the benefit of California Brewing Association of Southern California [Acme Brewing Co.] * * * It is understood that the California Brewing Association of Southern California shall not pay any dividends to stockholders until said loan of $350,000.00 is entirely liquidated together with all accrued interest." The latter mentioned corporation [taxpayer] was not and never has been a party or signatory to this contract.

To satisfy an outstanding mortgage of $50,000, the loan to taxpayer provided for in the contract was later increased to $400,000. The parties to the contract as modified have conformed strictly to its provisions.

In 1936 taxpayer sold 44,000 shares of preferred stock to Cereal Products, and dividends on them were paid in 1937 with the express consent of both stockholders. Cereal Products carefully restricted its consent to such preferred dividend payments.

By 1937 taxpayer had reduced its indebtedness to Cereal Products from $400,000 to $240,000.

Taxpayer paid an income tax for the years 1936 and 1937. It will be remembered that § 14 of the Revenue Act of 1936 imposes a tax on undistributed corporate profits and § 26(c) (1), 26 U.S.C.A. Int. Rev.Acts, pages 823, 836, excuses payment of this tax upon profits held from dividend distribution in accordance with the terms of "a written contract executed by the corporation prior to May 1, 1936."[1] Under this provision the taxpayer sought to be excused from paying undistributed profits taxes for the years 1936–1937.

The Commissioner of Internal Revenue allowed the credit claimed by taxpayer for 1936 but denied the same for 1937, "on the ground that a contract executed December

---

[1] "§ 26. Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

* * * * *

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *"

13, 1934 which prohibited the payment of dividends by the corporation until a note and mortgage was paid in full, was a legal restriction upon the corporation for the year 1936, during which time the company was indebted upon said note in the sum of $240,000.00, but that in 1937 the corporation was in a financial position to have paid said note and thereby remove the dividend restriction upon the corporation which prevented the payment of dividends for such year 1937."

Taxpayer was assessed $71,161.15 as a deficiency, and payment of that sum plus interest thereon was demanded of the taxpayer, who paid it and subsequently filed a claim for refund. No action was taken upon the claim for more than six months whereupon taxpayer brought this action.

The taxpayer contends that with the exception of one provision the contract between its two stockholders was made for the express benefit of taxpayer, that it accepted and adopted the contract by performing all the terms of the agreement, that one who accepts a contract made for his benefit becomes entitled to its benefits and subject to its liabilities, that adoption, ratification or any acts giving validity to a written instrument constitute execution of the instrument; that execution by any of such means satisfies the provisions of § 26(c) (1), and that any other conclusion would be a violation of the Fifth Amendment to the Constitution.

As pointed out by taxpayer, the relief from payment of tax on undistributed profits provided for in § 26(c) (1) requires that a contract creating the obligations which bring such section into operation shall have been executed prior to May 1, 1936, that it be in writing, that it contain a provision expressly dealing with the payment of dividends, and that it be executed by the corporation. The first three conditions are clearly met by the contract. But is the condition met that the contract must be "executed by the corporation?"

The Supreme Court of the United States and this court have declared that the credit granted by § 26(c) (1) of the Revenue Act of 1936 should be narrowly limited in effect to the exact situation therein defined. A claim thereunder is one "for a credit in the nature of a specially permitted deduction. It has been said many times that provisions granting special tax exemptions are to be strictly construed." Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29; see also Oviatt's v. Commissioner, 9 Cir., 128 F.2d 352, 354; Nevada-Massachusetts Co. v. Commissioner, 9 Cir., 128 F.2d 347, 348.

The contract under consideration herein was neither signed nor authorized to be signed by the taxpayer. Neither one nor the other of the two stockholders entered into the contract as agents of taxpayer. The contract was never expressly ratified or adopted by taxpayer. After it was signed a series of resolutions were passed by taxpayer's directors changing the capital stock structure of the corporation, issuing shares of stock to Cereal Products' and Bohemian Co., and taking other action. The resolutions conform exactly to the plan detailed in the contract, but mention of the contract is absent and seems to have been studiously avoided.

Not until March 8, 1937, when the directors passed a resolution asking Cereal Products' consent to the payment of a dividend on preferred stock, does the record show an express reference to the contract by taxpayer. Since § 26(c) (1) defines a written instrument executed prior to May 1, 1936, the resolution of March 8, 1937, fails to satisfy the terms of the statute.

It is true that taxpayer corporation was to a considerable extent the third party beneficiary of the contract between the stockholders, but we think something more than this was contemplated by statute, and by the Supreme Court in Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29: "The natural impression conveyed by the words 'written contract executed by the corporation' is that an explicit understanding has been reached, reduced to writing, signed and delivered." Phebus Oil Co. v. Commissioner, 5 Cir., 134 F.2d 217; Mastin Realty & Min. Co. v. Commissioner, 8 Cir., 130 F. 2d 1003; Caroline Mills v. Commissioner, 5 Cir., 126 F.2d 857.

The certainty of a writing is lacking in the circumstances of the instant case, and the distinction between this case and one involving a signed and binding agreement on the part of a taxpayer is of sufficient definiteness to overcome the objection that the Fifth Amendment to the Constitution has been violated. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 52, 61 S.Ct. 109, 85, L.Ed. 29.

The Commissioner's allowance of the claimed credit for 1936 is not decisive and has little argumentative weight as we analyze the applicable statute in the light of cited authorities.

Reversed.