**REED, WIBLE AND BROWN, INC., Plaintiff,**

v.

**MAHOGANY RUN DEVELOPMENT CORPORATION and Bank of America, Defendants.**

**Civ. No. 1982/168.**

District Court, Virgin Islands, D. St. Croix.

Nov. 2, 1982.

Joel H. Holt, Holt & Groner, Christiansted, St. Croix, V.I., for plaintiff.

Arthur Pomerantz, Charlotte Amalie, St. Thomas, V.I., for defendants.

## MEMORANDUM OPINION AND ORDER

O'BRIEN, District Judge.

This action for debt, declaratory relief and specific performance is before this Court on plaintiff's motion for partial sum-

mary judgment and request to fix the scope of arbitration. Plaintiff and defendant Mahogany Run Development Corporation submitted memoranda, supporting affidavits and documents, and appeared before this Court for oral argument on September 22, 1982. For the reasons which follow this Court will grant plaintiff's motion and direct the parties to submit to arbitration the issue of damages, if any, due for the late completion of the condominiums.

On December 4, 1980, defendant, Mahogany Run Development Corporation (hereinafter referred to as MRDC) entered into a construction contract with plaintiff, Reed, Wible and Brown, Inc. (hereinafter referred to as RWB) whereby RWB was to build five condominium units in Mahogany Run, a housing complex being developed by MRDC on St. Thomas. The construction was divided among several contractors and RWB was awarded the contract for sections of the project known as Phase IV–A and Phase IV–B.

The contract called for co-defendant Bank of America, which financed the project, to make "progress payments" to RWB as work on the project progressed; and to retain ten percent of total payments due RWB, to be paid out upon completion of the work. Bank of America presently holds $143,476.62, which includes both the ten percent "retainage" sum and the withheld progress payments. Bank of America asserts no claim to the funds, is merely a stakeholder in the dispute at bar, and remains willing to distribute the $143,476.62 as directed by this Court.

As the construction neared its conclusion, RWB and MRDC entered into negotiations to tie up loose ends regarding completion of the condominiums. A letter from RWB to MRDC dated January 28, 1982 was signed by both parties and set forth their understanding as to the remaining duties and rights under the construction contract. The agreement provided for: 1) MRDC's payment of $66,000 to RWB for work previous-ly billed to MRDC, 2) MRDC's conveyance of plot # 142 of Mahogany Run upon final closing of Phase IV–B, and 3) payment to RWB of "retainage" and unpaid progress payments, due when the $66,000 is paid.[1] Correspondingly, the agreement provided that MRDC would draw up a "punch list" by February 7, 1982, specifying all items which remained to be completed by RWB. In a handwritten addendum, initialed by both parties, each further agreed to submit to arbitration any damages due MRDC arising from RWB's late completion of the condominiums.

A second document entitled "Release and Waiver" was drawn up and executed by RWB on February 26, 1982. This two-page document, the source of the parties' dispute, is a standard release form whereby RWB generally released and discharged all construction liens against the recently completed buildings. This document also contained an addendum, typed in by RWB on the bottom of page two of the release. The addendum reiterated some of the matters settled in the January 28th agreement: that MRDC will pay $66,000 (less any damages for late completion assessed by an arbitrator) to RWB on the closing of building # 322, and that MRDC will convey Plot # 142 of Mahogany Run to Beth Meyers, as assignee of RWB, upon the final closing of Phase IV–B. The addendum further states:

> Also, except for the warranties and guaranties provided for in the original contract for this release of 322 shall serve as a general release from GEC to MRDC including final punch list and from MRDC to GEC, pursuant to which each party waives, for now and forever hereinafter, any claims for any matters whatsoever arising from the construction for Phase IV–A and Phase IV–B.
>
> Also, damages due to late completion, if any, will be assessed as per contract and in the event of disagreement as to completion date, Tom Brunt will arbitrate, and his decision will be final.

1. The letter refers to the contracting parties as MRDC and General Engineering Corp. (GEC). GEC assisted RWB on the project. For the purposes of this dispute, GEC and RWB are read interchangeably.

Plaintiff's Memorandum in Support, Exhibit D.

This release was received by MRDC on February 26, 1982 whereupon it was initialed in the margin at the addendum by James Armour, President of MRDC. MRDC used the document on that same date to facilitate the closing on three condominium units in Building # 322 of Mahogany Run Condominiums.

Plaintiff, RWB, seeks partial summary judgment on the basis that the February 26, 1982 release represents the final agreement between RWB and MRDC, and seeks specific performance thereof. Defendant, MRDC counters that the February 26th document is not representative of the parties' final agreement, that RWB has not fully performed under the original December 14, 1980 contract, and, in any event this matter should be arbitrated pursuant to an agreement in the December 4, 1980 contract to arbitrate "all claims, disputes and other matters in question between the contractor and the owner arising out of, or relating to, the contract documents." Defendant's Motion in Opposition, Exhibit A, § 7.9.1 at 12.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure considers summary judgment and provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ Summary Judgment is an extreme remedy which is not to be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy, and that the other party is not entitled to recover under any discernable circumstances. *Weber v. Towner County,* 565 F.2d 1001 (8th Cir.1977); See *Tomalewski v. State Farm Insurance Co.,* 494 F.2d 882 (3d Cir.1974); *Janek v. Celebrezze,* 336 F.2d 828 (3d Cir.1964). In pass-

ing upon a motion for summary judgment the Court is required to review the facts in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

RWB asserts that, in the January 28th letter and the February 26th release, MRDC expressly agreed to pay the $66,000 due RWB and convey plot # 142 upon the closing of Building # 322 of Mahogany Run Condominiums, and MRDC admits that Building # 322 has been closed. Plaintiff further contends that in the addendum to the release of February 26, 1982, MRDC waives any claim to the funds presently held by Bank of America ($143,476.62).

Defendant resists summary judgment on the grounds that MRDC did not execute the February 26 release, that the original building contract required submission of all disputes to arbitration, and that there is a factual dispute as to whether the punch list has been completed.

■ MRDC initially contends that the February 26 "Release and Addendum" is not binding as it was never executed by MRDC. To execute a legal instrument means to perform what is required to give validity to it. *Riegel v. Holmes,* 171 N.E.2d 553, 563 (Ohio Com.P.1960), *In re Renter's Estate,* 148 Neb. 776, 29 N.W.2d 466, 468 (1947). "A contract is executed by being signed, and not by being adopted, and the signature is a part of its execution." *Mastin Realty Mining Co. v. Commissioner,* 130 F.2d 1003, 1006 (8th Cir.1942); *see Anglim v. Acme Brewing Co.,* 143 F.2d 412 (9th Cir.1944). One may execute a document simply by placing his initials thereon with the intent to sign, or for the purpose of authenticating the instrument. *See NLRB v. Waterfront Employers of Washington,* 211 F.2d 946 (9th Cir.1954); *See generally* Restatement (Second) of Contracts § 134 (1981).

■ MRDC admits to the initialing of the addendum by its president, a business per-

son undoubtedly familiar with building contracts and construction lien releases. See Defendant's Motion in Opposition, affidavit of James Armour, October 4, 1982. Defendant further admits to immediately using the initialed release to obtain a substantial benefit, the sale of three condominium units valued in excess of $500,000. See Defendant's Motion in Opposition, affidavit of James Armour, October 4, 1982. The February 28th letter was shown to the potential mortgagee as a valid instrument signifying that the condominium units could thereafter be conveyed free and clear of all construction liens. Defendants cannot now deny that the addendum was initialed with the intent requisite to validate the release. Having accepted the benefits of the timely release, MRDC cannot now escape its burdens. *United States v. San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1939); *United States v. Lamont,* 155 U.S. 303, 15 S.Ct. 97, 39 L.Ed. 160 (1894).

■ MRDC argues, however, that the release was not initialed with the intent to waive the punch list and allow the funds held by Bank of America to be immediately paid to RWB. It is a basic tenet of contract law that the subjective intent of the parties to a contract is immaterial. They are bound only by their objective manifestations—in this case, the clear language of the "Release and Addendum". As Judge Learned Hand said in *Hotchkiss v. National City Bank,* 200 F. 287, 293 (S.D.N.Y.1911), *aff'd* 201 F. 664 (2d Cir.1911), *aff'd* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913):

> A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.

■ Disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment. *Par-Knit Mills v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54, (3d Cir.1980); *New Wrinkle, Inc. v. John L. Armitage & Co.,* 238 F.2d 753, 757 (3d Cir.1956). "Contracts are not rendered ambiguous by the mere fact that the parties do not agree on their proper construction." *Freeman v. Continental Gin Co.,* 381 F.2d 459, 465 (5th Cir.1967); *Whiting Stoker Co. v. Chicago Stoker Corp.,* 171 F.2d 248, 250–251 (7th Cir.1948).

The language of the documents is capable of but one interpretation. In the January 28th letter, MRDC clearly agreed to pay the contractor $66,000 and to convey plot # 142 of Mahogany Run upon RWB's completion of the punch list. The February 26th document waives completion of the punch list, then, just as clearly, states that same payment and conveyance will take place upon the closing of Building # 322. MRDC admits to this closing. See Defendant's Motion in Opposition, Exhibit B.

■ In the January 28th letter, MRDC further agrees to pay the retainage plus all progress payments (the $143,476.62 held by Bank of America) at the same time the $66,000 is paid. While the February 26th release does not expressly mention the $143,476.62, MRDC does unequivocally waive "for now and forever, any claims for any matters whatsoever arising from construction of Phase IV–A and Phase IV–B." Plaintiff's Memorandum in Support, Exhibit D. We find this extremely broad language sufficient to waive MRDC's claim to the funds now held by Bank of America.

What is clear from all of this, is that MRDC needed the cash from a closing on the building built by RWB. The bank would not close without a release of the construction lien in favor of RWB. In order to obtain the release of this lien, MRDC agreed to forego any claims for the $66,000 and the retainage held by the Bank of America. It was a simple "quid pro quo" with one exception: having obtained the "quid", MRDC did not want to give up the

"quo". The Court will not permit them to do this.

▮ MRDC's two other positions need be mentioned but briefly. MRDC argues that this dispute should be resolved through arbitration pursuant to the December 14, 1980 contract. As all the material facts relevant to this case are uncontradicted and agreed upon, this Court finds there is no arbitrable dispute within the terms of the original contract. The parties will, however, arbitrate the issue of whether MRDC is entitled to damages due for late completion of the condominiums.

Defendants' final contention, that a triable factual issue exists, is mooted, as the present agreement between RWB and MRDC waives the requirement of completion of a punch list.

In sum, since the written contract documents are clear and unambiguous, and no breach on the part of the plaintiff has been shown, the plaintiff's motion for partial summary judgment must and will be granted.

### ORDER

THIS MATTER is before the Court on a motion for partial summary judgment. Plaintiff also seeks to have the Court fix the scope of arbitrable issues. The Court having received memoranda and exhibits, and having heard oral argument, and having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

1. THAT plaintiff's motion for partial summary judgment be and the same is hereby GRANTED;

2. THAT the Defendant Bank of America, within five days of the date of this order, release to the plaintiff all sums held by it as retainage or as unpaid progress payments in connection with the contract between plaintiff and Defendant Mahogany Run Development Corporation.

3. THAT upon filing of the bond provided for in No. 4 below, Defendant Mahogany Run Development Corporation pay to the plaintiff the sum of $66,000 withheld by reason of the alleged contract dispute.

4. THAT Plaintiff Reed, Wible and Brown, Inc. file with the Clerk of this Court a bond in the amount of $66,000 providing for the payment of any amounts awarded in the arbitration proceeding which is to be conducted as directed by this order.

5. THAT plaintiff and Defendant Mahogany Run Development Corporation submit to arbitration the issue of damages, if any, due to that defendant by reason of the plaintiff's late completion of the project.

6. THAT Mahogany Run Development Corporation convey to the plaintiff, free and clear of all liens, Plot No. 142 of Mahogany Run, within ten days of the date of this order.