**Kelvin DENNIE, individually and on behalf of his minor son, Nkosi, Plaintiffs,**

**v.**

**UNIVERSITY OF PITTSBURGH SCHOOL OF MEDICINE, and Presbyterian University Hospital, and Neil Wald, M.D. and John Doe, Defendants.**

**Civ. A. No. 85–2624.**

United States District Court, W.D. Pennsylvania.

July 1, 1986.

Regis M. McClelland, Pittsburgh, Pa., for plaintiffs.

Ingrid M. Lundberg, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

Kelvin Dennie, on behalf of himself and his son, signed a release in a Virgin Islands lawsuit brought against Hess Oil Corporation and others for occupational injuries due to exposure to radiation. Although evidence of record showed minimal, if any, physical injury, Mr. Dennie obtained a settlement of $250,000. One year later, plaintiff and his son filed a second suit in the District Court for the Virgin Islands. That suit charged the University of Pittsburgh School of Medicine, Presbyterian University and Dr. Neil Wald with breach of contract, fraud and violation of privacy rights in conjunction with medical examinations of the Dennies taken as discovery in the initial lawsuit. The district court dismissed for lack of personal jurisdiction. Kelvin Dennie and his son filed the instant complaint in this district. Defendants have moved for summary judgment under Fed.R.Civ.P. 56.

We shall grant summary judgment as to each count. First, we hold that plaintiffs waived all privileges or contractual rights against disclosure of medical records by filing the initial lawsuit. Under the rules of discovery of the Federal Rules of Civil Procedure, such medical information is discoverable when a party places his physical condition at issue. Second, we hold that plaintiffs released all claims against the medical defendants by consenting to a broadly worded settlement agreement and release.

### I. History of Case

Kelvin Dennie and his minor son, Nkosi, are residents of St. Croix, Virgin Islands. Now in his early 40's, Kelvin Dennie worked much of his adult life as a radiographer at the Hess Oil refinery site in St. Croix. He operated a gamma ray emitting projector, used to detect structural damage in metal products. Since 1976, Dennie experienced fatigue and weakness. Upon evaluation by a hematologist, plaintiff was discovered to have a blood disorder known as leukopenia. Further tests indicated that Dennie possibly suffered from radiation-induced granulocytopenia, a reduction in the number of granulocytes in the peripheral blood.

Kelvin Dennie filed suit on behalf of himself and his minor son against his employer, Chicago Bridge & Iron Co., Ltd., and Hess Oil in 1977. Pursuant to Fed.R. Civ.P. 35, defendants arranged several medical examinations for the Dennies in Philadelphia and Pittsburgh. The employ-

er retained Dr. Neil Wald, director of the department of radiation medicine of Presbyterian University in Pittsburgh, as a medical consultant. The Dennies also were examined by Dr. Dane Boggs, professor of hematology at the University of Pittsburgh School of Medicine.

To diagnose Kelvin Dennie's blood disorder, Dr. Boggs conducted tests arguably more intensive than contemplated under Rule 35. Dr. Boggs performed repeated bone marrow aspirate and biopsy tests as well as chromosomal analysis. Before these tests were conducted on May 27, 1980, Kelvin Dennie individually and on behalf of his son signed a consent form, which stated: "Drs. Robert A. Joyce and Associates are conducting studies to better understand factors which regulate blood cell production and distribution. These studies are not necessarily part of a casual diagnostic evaluation and are being described separately. Your consent is being sought for each separate study." The consent form also states that any information "obtained from this research, including answers to questionnaires, history, laboratory data, findings on physical examination, biopsy or surgery will be kept strictly confidential and never identified in any report or publication" unless the patient signs a release.

The tests indicated that Kelvin Dennie was experiencing decreased production of granulocytes in his blood. The same tests performed on his son, Nkosi, showed no similar condition, indicating that the condition may not be congenital. Other appropriate family members were not tested; hence, Dr. Boggs did not rule out the possibility of familial neutropenia.

Results of the tests were obtained by Dr. Wald for his evaluation of Dennie on behalf of Dennie's employer. Dr. Wald concluded that very little medical evidence supported a relationship between Dennie's occupational radiation exposure and any deviations from normal health. In a letter to an attorney for plaintiff's employer, Dr. Wald cited the Presbyterian Hospital tests and noted no biological evidence that radiation-induced changes had been produced in chromosomes of either the bone marrow cells or lymphocytes.

Based on the Wald report, defendants in the Virgin Islands case commenced settlement negotiations. On October 23, 1980, for a consideration of $250,000, Kelvin Dennie individually and on behalf of his son executed a release to settle all claims arising from the litigation. The release stated that the initial defendants "and all other persons, associations and corporations, whether herein named or referred to or not" shall be released from liability for "all and any future injuries, death and/or damages not now known to any of the parties hereto but which may later develop or be discovered, including the effects or consequences thereof and including all causes of action therefor."

Three years after settlement, Kelvin Dennie and his son filed a complaint against the instant defendants for breach of contract for disclosing the results of medical tests, fraud in medical evaluations and for infringement of the right of privacy. Defendants have moved for summary judgment as to each claim.

## II. *Discussion*

Summary judgment may only be granted if, upon a review of the materials properly before the court and viewing the evidence in a light most favorable to the non-moving party, the court is convinced that no genuine issue of material fact remains for trial and that the movant is entitled to judgment as a matter of law. *Lang v. New York Life Insurance Co.*, 721 F.2d 118 (3d Cir. 1983). Summary judgment is a procedure by which the court can pierce the pleadings and assess proof to determine whether a trial is necessary. Notes of Advisory Committee to Fed.R.Civ.P. 56(e). Based upon the submitted affidavits and other evidence of record, we find no issue of material fact remaining for trial because plaintiffs either have waived any privilege or contract right to confidentiality of medical reports or have released these defendants from liability in return for a $250,000 settlement.

## A. *Waiver*

The three-count complaint is based upon two acts. One is the alleged wrongful disclosure to defense counsel of certain medical findings of plaintiffs' physical examinations in Pittsburgh. The other is the alleged fraudulent medical summary prepared by Dr. Wald upon which plaintiffs relied "to their damage" in settling for $250,000. Complaint at paragraph 22. Count one, the claim for breach of contract, and count three, the claim for deprivation of privacy, are based upon the first act. Count two, a claim for fraudulent misrepresentation, is based upon the second act. We hold that, by filing the initial lawsuit, plaintiffs have waived any right to recover damages under counts one and three.

Kelvin Dennie alleges that he and his son entered into an agreement with the University of Pittsburgh School of Medicine and Presbyterian Hospital in 1980, whereby plaintiff consented to investigational research on blood cell production and distribution. He alleges that consent was conditioned on confidentiality of test results, and that the contract was breached when Dr. Wald released test results to an opposing attorney in Dennie's initial lawsuit.

To determine whether defendants breached a promise of confidentiality, we must consider the examination in its proper context. Plaintiffs filed suit for blood disorders in 1977. Defendants required plaintiffs to undergo medical examinations under Rule 35 because plaintiffs placed their medical conditions at issue. Plaintiffs knew that the examinations were arranged by the initial defendants and knew that defendants had the right to discover medical information.

■ Dennie argues that he never authorized his attorney to waive any doctor-patient privilege to permit disclosure of the results of the examinations. Affidavit of Kelvin Dennie at paragraph 2. However, the physician-patient privilege may be waived by the patient. *In re Zuniga,* 714 F.2d 632 (6th Cir.1983), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). Where the patient institutes suit to recover for physical injuries, the patient waives the privilege as to all medical treatment and examination as to the injuries of which complaint is made. *In re Agent Orange Product Liability Litigation,* 91 F.R.D. 616 (E.D.N.Y.1981). Pennsylvania law also recognizes that the privilege evaporates when the patient sues "for damages on account of personal injuries." 42 Pa.C.S.A. § 5929 (Purdon's 1986). These statements of law reflect the Supreme Court pronouncement in *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), i.e., substantive due process rights are not infringed by the Rule 35 requirement that a plaintiff may be subjected to medical examinations when the extent and nature of injuries are at issue.

■ That Dennie and his son were required to undergo medical examinations in the initial lawsuit is beyond peradventure. Plaintiffs now complain that the doctors and hospital willfully breached a contractual promise of confidentiality as stated in a consent form. We cannot hold that a promise of confidentiality in a consent form overcomes a defendant's right to discoverable medical evidence under Rule 35. The consent form contains boilerplate language advising the patient that all medical findings will be kept confidential unless the patient signs a release. This language merely reflects the hospital's duty and the patient's privilege under state law. 42 Pa. C.S.A. § 5929. Where the patient has acted to raise a public issue over his medical condition and has invoked the jurisdiction of federal court to resolve the issue, the privilege under state law vanishes and the patient has waived confidentiality.

If the Dennies had undergone complex blood and bone marrow testing before suit was filed in 1977, defendants would not be deprived of the test results under Fed.R. Civ.P. 26, regardless of any pledge of confidentiality. It is illogical to enshrine medical findings under the protection of a privilege or contract right when the testing occurs after suit has been filed. In essence, once a plaintiff complains of physical injuries, the world of medical information as to those injuries is the defendant's oyster. We hold that plaintiffs cannot recover for alleged breach of confidentiality

against the medical defendants where medical examinations were performed relating to pending litigation.

#### B. *Release*

 Plaintiffs executed a settlement and release in their initial lawsuit. In consideration of $250,000, plaintiffs agreed to waive all claims against Hess Oil and Dennie's employer, Chicago Bridge & Iron Company, Ltd. The release further waived all claims against Chicago Bridge's "assigns, and/or their heirs, executors, and administrators, and also any and all other persons, associations and corporations, whether herein named or referred to or not...."

The Dennies argue that the injuries in the instant case are distinct from the injuries complained of in the initial case, and that fraud is a basis for avoiding the release. Plaintiffs' Brief at pps. 8–10. The only arguable injury arising from the instant case is the "substantial monetary damages" suffered by plaintiffs in settling the initial case for $250,000. Complaint at paragraphs 19, 28, 44. The other alleged injuries—physical pain, mental stress, lost earnings, depressed moods and damage to family and marital relationships—are based on alleged radiation-induced illness, the subject of the initial civil action.

We find that plaintiffs' arguments are unpersuasive, given the nature of the claims against the medical defendants. Although plaintiffs complain of fraud in the inducement of the settlement agreement, they have chosen not to rescind the agreement, but to retain the settlement and pursue other defendants for compensation for the same injuries. Such strategy is not countenanced under Pennsylvania or Virgin Islands law. Where the release manifests an intent to settle all accounts, the release will be given full effect even as to unknown claims, unless the release itself is upset due to fraud. *Polsky v. Radio Shack*, 666 F.2d 824 (3d Cir.1981); *Wolbach v. Fay*, 488 Pa. 239, 412 A.2d 487 (1980); *Reed, Wible and Brown v. Mahogany Run Development Corp.*, 550 F.Supp. 1095 (D.V.I.1982). See also the opinion of this court in *Schulzendorf v. Pittsburgh and Lake Erie Railroad Co.*, 640 F.Supp. 40 (W.D.Pa.1986).

Because the settlement agreement discharges all claims arising from the initial lawsuit and releases all associates of Chicago Bridge, which must include the instant defendants, we hold that the instant claims for breach of contract, fraud and violation of right to privacy must be dismissed. Our resolution of defendants' motion for summary judgment precludes consideration of arguments based on statutes of limitations, collateral estoppel, choice of law, state action and questions arising from the Privacy Act, 5 U.S.C. § 552a(g)(5), and relevant regulations.

#### III. *Summary*

Summary judgment will be granted to defendants on all three counts. We hold that plaintiffs waived all physician-patient privileges to confidentiality of medical records by filing the initial personal injury suit. We further hold that any contractual right to confidentiality arising from the consent form is overcome by the initial defendants' right to discover relevant medical information. Finally, we hold that all claims against the medical defendants, who were retained by opposing counsel in the initial lawsuit, must be dismissed because the claims were discharged in a settlement agreement.