**KURT I. HENDRICKS, Plaintiff**
**v.**
**TRANSPORTATION SERVICES**
**OF ST. JOHN, INC., Defendant**

Civil No. 626/1995

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

April 26, 1999

21

EDWARD E. PARSON, JR., ESQ., Frenchtown Marina, St. Thomas, U.S. Virgin Islands *Attorney for Defendant*

JOHN H. BENHAM, ESQ. Watts & Benham, P.C., St. Thomas, U.S. Virgin Islands, *Attorney for Defendant*

HOLLAR, J.

## MEMORANDUM OPINION

This matter is before this Court on plaintiff's second motion for partial summary judgment requesting the Court to find the defendant liable as a matter of law. After having considered the memoranda of law submitted and oral argument by counsel for the parties, this Court again finds that there exist genuine issues of material fact in dispute as to liability. Accordingly, the motion is denied.

## I. FACTS AND PROCEDURAL POSTURE

This case arises out of personal injuries suffered by the plaintiff, Kurt Hendricks, on board a commercial maritime vessel; to wit: the ferry MV Caribe Air Ride, while it was moored at Red Hook, St. Thomas, Virgin Islands, on October 23, 1994. The MV Caribe Air Ride is owned by the defendant, Transportation Services of St. John, Inc. [hereinafter "Transportation Services"], a U.S. Virgin Islands corporation, having its principal place of business located in St. John, United States Virgin Islands. Plaintiff contends that on October 23, 1994, he boarded the vessel, as a passenger, after having been instructed to do so by the boat's captain, Clifton Boynes. After boarding the vessel, plaintiff fell five (5) to six (6) feet, through an open hatchway, into the boat's engine room, causing injury to several parts of his body, including his back, legs and feet. The hatch, located within the floor of the boat, was left open by defendant's employee, Michael Sylvester. No one warned plaintiff of this unsafe and dangerous condition before he embarked.

On August 11, 1995, plaintiff instituted this action for damages resulting from defendant's gross negligence in failing to maintain its vessel in a reasonably safe condition. The defendant filed an

answer on October 12, 1995. Thereafter, discovery was exchanged and depositions were taken. On June 4, 1996, the plaintiff filed a motion for partial summary judgment. The defendant opposed the motion and the Court, on September 17, 1996, denied the motion. On September 14, 1998, the plaintiff renewed his motion for partial summary judgment, and again the defendant filed an opposition. The Court heard oral arguments on this motion on Friday, October 2, 1998. After hearing the arguments, the Court reserved decision and ordered the parties to file supplemental briefs.

## II. DISCUSSION

In order to rule on plaintiff's pending motion, the Court must address certain procedural and substantive issues, specifically: (1) whether maritime law or territorial law governs this action; (2) whether the Territorial Court has jurisdiction to adjudicate an action based on maritime law; (3) what constitutes maritime law; (4) whether an application of maritime law in this action will yield a different result, in any aspect, than an application of territorial law; and (5) whether there exist any genuine issues of fact which are in dispute.

A. *This Action Arises Under Maritime Law and Not Territorial Law*

This personal injury action, occurring in St. Thomas, United States Virgin Islands, between two (2) residents of the Virgin Islands, would ordinarily invoke territorial law regarding negligence. Thus, V. I. CODE ANN. tit. 1, § 4 (1995) would, ordinarily, be applicable. This section of the Code states:

"The *rules of the common law* as expressed in the *restatements of the law approved by the American Law Institute*, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, *in the absence of local laws to the contrary.*" (Emphasis provided).

V.I. CODE ANN. tit. 1, § 4 (1995) notwithstanding, the Supreme Court of the United States, in *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043 (1995), has articulated the circum-

23

stances which, if they exist, trigger the application of federal maritime law. Maritime law, as opposed to state or territorial law, is applicable to any action, including that for personal injuries, where the cause of action occurs: (1) on a vessel; (2) in navigable waters; (3) has a potential impact on maritime commerce; and (4) bears a substantial relationship to traditional maritime activity. *Grubart, supra, at pp. 531-34.*

In applying the four (4) prong *Grubart* analysis to the case sub judice, it is undisputed that the plaintiff fell through an open hatch after having boarded the MV Caribe Air Ride, while it was moored to the Red Hook dock and floating in the sea water of Vessup Bay.

With respect to the first prong, the common definition of the term "vessel" set out by Congress is "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation by water." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 3.6, at 88-89 (2d ed. 1994) (citing 1 U.S.C. § 3) *quoted in Sevinson v. Cruise Ship Tours, Inc.*, 37 V.I. 231, 244 (D.V.I. 1997). Hence, the MV Caribe Air Ride, a ferry that transported passengers between the islands of St. Thomas and St. John, was a vessel.

Regarding the second prong of the *Grubart* analysis, a body of water is "navigable", for purposes of admiralty jurisdiction, if it is used, or is susceptible of being used, as an artery of commerce. *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975); *George v. Beavark, Inc.*, 402 F.2d 977 (8th Cir. 1968). In the instant case, the accident occurred on a vessel, moored in Vessup Bay, St. Thomas, at Red Hook dock. It is undisputed that the waters of Vessup Bay transport sundry vessels engaging in commercial shipping, as well as other commercial activity, every day. As such, the waters of Vessup Bay, St. Thomas, are, for purposes of admiralty jurisdiction, navigable waters.

Having determined that the alleged tort occurred on a vessel, in navigable waters, the Court must now consider the characteristics surrounding the incident "at an intermediate level of possible generality." *Grubart*, at p. 538. The incident involved here, described at an intermediate level of possible generality, is "an accident on board a vessel docked on navigable waters while accepting passengers for a ferry ride." In determining whether

24

such an accident has the potential to disrupt maritime commerce, this Court is guided by the U. S. Supreme Court's findings in *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982), and *Sisson v. Ruby*, 497 U.S. 358 (1990). *Foremost, supra*, involved a collision between two pleasure boats on navigable water. The Supreme Court considered the possibility that the collision might require the diversion of commercial craft from their chosen course of navigation, holding that *such a possibility* constituted a potential impact on maritime commerce. *Id.* at 675. In *Sisson*, a case involving a burning pleasure boat, where fire spread to the marina and to other boats within close proximity, the Supreme Court found that the burning of the boat on navigable water constituted a potential impact on maritime commerce. Thus, the threshold issue becomes whether a *possibility* of disrupting the commercial activities of other maritime operators exists.

In the case under consideration, a passenger was injured on a commercial vessel in navigable waters, in close proximity to other commercial vessels. Given the limited dockage that exists at the congested wharf in Red Hook, and the possibility that the ferry schedules of other boat-ride operators might be delayed because of the time that might have to be spent in attending to, and removing from the boat, an injured passenger,[1] this Court finds that the circumstances of this accident demonstrate the potential to affect maritime commerce.

■ In addressing the final prong of the *Grubart* test, the Court must consider the general character of the activity that gave rise to the claim, and whether such activity has a substantial relationship to traditional maritime activity. Traditional maritime activity is satisfied where that activity is the carriage of passengers for compensation. The transport and care of paying passengers constitutes "quintessential maritime activity affecting commerce." *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 600 (3d Cir. 1991). Because the defendant was engaged in the business of transporting paying

---

[1] In this case the injured passenger did not have to be removed from the boat. However, for the purposes of the *Grubart* analysis, the fourth element of the test calls for a determination as to whether the incident in question *could have* impacted upon maritime commerce, rather than if it actually did impact maritime commerce.

passengers across the navigable waters of the U. S. Virgin Islands, the actions of Captain Boynes, in directing the plaintiff to board the MV Caribe Air Ride for a scheduled trip, establish the "substantial relationship to traditional maritime activity" requirement of the fourth prong of the *Grubart* test. Hence, this Court finds that general maritime law applies in this case. As a maritime tort claimant, the plaintiff must still prove the essential elements of a negligence claim, including (1) existence of a duty; (2) breach of that duty; (3) proximate cause; and (4) damages. 1 SCHOENBAUM § 3.5 at 157.

B. *The Territorial Court Has Jurisdiction To Adjudicate This Matter based on Maritime Law.*

Section 1333(1) of Title 28 of the United States Code gives the federal district courts "original jurisdiction, exclusive of the courts of the States", in admiralty and maritime cases, "saving to suitors in all cases all other remedies to which they are otherwise entitled." Despite the apparent grant of exclusive jurisdiction, the "saving to suitors" clause is interpreted to preserve to suitors the right of a common law remedy "in all cases where the common law is competent to give it." *Leon v. Garceran*, 78 U.S. (11 Wall.) 185, 191 (1871). Since the common law is competent in all cases where the suit is *in personam*,[2] a plaintiff in such causes may elect either to proceed in admiralty or to bring an ordinary civil action, either at law in state court or in a federal district court under federal diversity jurisdiction or some other basis of federal jurisdiction.[3] This rule is subject to two qualifications. There is exclusive admiralty jurisdiction over proceedings in rem, because the in rem action was not known to the common law.[4] Moreover, Congress, by statute, has conferred exclusive admiralty jurisdiction upon the federal courts in suits under the Limitation of Shipowners' Liabil-

---

[2] A common law remedy is simply any *in personam* remedy. *Bergeron v. Quality Shipyards, Inc.*, 765 F.Supp. 321, 323 (E.D. La. 1991).

[3] 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 4-2, at 135 (2d ed. 1994).

[4] *Id.* (citing *Madruga v. Superior Court*, 346 U.S. 556 (1954)). There is accordingly exclusive federal jurisdiction over actions *in rem* under Supplemental Admiralty Rules C and D, as well as *in rem* prize proceedings. There is also exclusive federal jurisdiction over actions brought under Rule B, since this remedy is the creation of the Federal Rules of Civil Procedure.

ity Act,[5] the Ship Mortgage Act,[6] the Suits in Admiralty Act,[7] and the Public Vessels Act,[8] and for actions to foreclose preferred ship mortgages.[9]

■ The effect of the saving-to-suitors clause essentially is to provide a plaintiff who has an *in personam* claim the choice of proceeding in an ordinary civil action in a state (or territorial) or federal court, rather than bring a libel[10] in admiralty in federal court. *Concordia Co. v. Panek*, 115 F.3d 67, 70 (1st Cir. 1997). As such, a plaintiff cannot invoke the saving-to-suitors clause unless the action also could have been brought in admiralty. *Bonnette v. Shell Offshore, Inc.*, 838 F.Supp. 1175, 1180 (D.C. Tex. 1993). Because the elements of a maritime negligence cause of action are essentially the same as those required under a common law negligence cause of action, this maritime claim may be brought in state court. *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 245 (1942). State (or territorial) courts have concurrent jurisdiction with federal courts over in personam admiralty cases. *Bergeron v. Quality Shipyards, Inc.*, 765 F.Supp. 321, 323 (E.D. La.1991). However, where, as here, the plaintiff, under the "savings to suitors" clause, elects to maintain a civil action at law in territorial court which could have been brought in admiralty, federal maritime law governs the rights of the parties. *Sosebee v. Rath*, 893 F.2d 54, 56 n.5 (3d Cir. 1990) (upholding application of general maritime law to tort committed in navigable waters surrounding the Virgin Islands and, on that basis, reversing award of attorney's fees made pursuant to V.I. CODE ANN. tit. 5, § 541 (1967) (citing *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 605 F.2d 1340, 1344 (5th Cir. 1979))).

■ Where admiralty law is specifically invoked, both procedural and substantive maritime law is applied exclusively. How-

---

[5] 46 U.S.C. § 183 *et seq* and Supplemental Admiralty Rule F.

[6] 46 U.S.C. § 911 *et seq.*

[7] 46 U.S.C. § 741 *et seq.*

[8] 46 U.S.C. § 781 *et seq.*

[9] 46 U.S.C. § 31325(c).

[10] Formerly, the initiatory pleading in an admiralty action, corresponding to the declaration, bill or complaint. Since 1966 the Federal Rules of Civil Procedure and Supp. Admiralty Rules have governed admiralty actions and as such, admiralty actions are now commenced by complaint. BLACK'S LAW DICTIONARY 916 (6th ed. 1990).

ever, where admiralty is not invoked, by virtue of the saving-to-suitors clause the plaintiff may, (1) bring the maritime action in state court; (2) preserve certain procedural rights, despite the application of federal maritime law;[11] and (3) utilize substantive local law as long as such does not conflict with general maritime law.[12]

## C. *General Maritime Law*

There are three primary sources of admiralty law. First, under Article (III) of the U.S. Constitution, the judicial power of the United States extends to "all Cases of admiralty and maritime Jurisdiction."[13] From this grant of power the federal courts have authority to develop a substantive body of law applicable to cases within the admiralty and maritime jurisdiction.[14] This substantive body of *judge-made* law is known as the general maritime law. As such, the general maritime law of the United States is a component of federal common law that furnishes the rule of decision in admiralty and maritime cases in the absence of preemptive legislation.[15]

The second primary source of admiralty law arises from Congress' exercise of its constitutional powers under the Admiralty Clause and the Commerce Clause.[16] Where Congress has enacted legislation, the general maritime law is subordinated either by

---

[11] *Becker v. Crounse Corp.*, 822 F.Supp. 386, 390 n. 1, (D.C. Ky. 1993) (A plaintiff who elects to sue in state court retains the right to a jury trial . . .); *See also, Pierpoint v. Barnes*, 94 F.3d 813, 816 (2d Cir. 1997) (Common law maritime cases filed in state court are not removable to federal court under the savings-to-suitors clause, which preserves the plaintiff's right to a state court forum in cases arising under the common law of the sea. (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 363, 79 S.Ct. 468, 475 (1959))), *cert. denied* 117 S.Ct.1691 (1997).

[12] *Hebert v. Diamond M. Co.*, 367 So.2d 1210 (La.App. 1 Cir. 1978) (What is saved under the "the saving to suitors" clause is not a remedy at common law, but a common law remedy; thus, a maritime or admiralty action in a non-admiralty court is still controlled by federal substantive law, *but the remedy is regulated by the lex fori.*)

[13] 13 U.S. Const. Art. III, § 2.

[14] *See,* 28 U.S.C. § 1333.

[15] *See, Southern Pacific Co. v. Jensen*, 244 U.S. 205, 212 (1917); *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 95-97 (1981).

[16] 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 5-1, at 154 (2d ed. 1994).

preemption, or by virtue of having been made to conform and/or comport with such legislation.[17]

The third primary source of admiralty law is found in the several international conventions in the maritime field.[18] These conventions regulate the global shipping industry, ensuring the smooth operation of vessels from different nations. This is accomplished by negotiating an international convention on a particular topic, followed by adoption of such agreements through domestic legislation.[19] The United States is a party to many international conventions.

The general maritime law provides remedies for injuries and damage caused by negligence and intentional misconduct, and in certain cases, without regard to negligence.[20] Since the substantive law applicable in cases of admiralty jurisdiction is federal law,[21] the federal courts, in the absence of a preemptive statute, are free to fashion federal common law remedies.[22] Accordingly, negligence is an actionable wrong under the general maritime law.[23]

A negligence cause of action may be invoked by virtually anyone who suffers injury or loss in an admiralty setting.[24] Because the plaintiff herein sustained alleged injuries while on a vessel, in navigable waters, engaged in activity substantially related to traditional maritime activity, and the incident was of the sort with the potential to disrupt maritime commerce, this dispute is cognizable under a maritime negligence cause of action.

D. *When An Application Of General Maritime Law Yields A Different Result Than An Application Of Territorial or Local law, General Maritime Law Will Govern.*

As a result of maritime law being applied in this action premised upon negligence, important substantive and procedural

---

[17] *Id.*

[18] *Id.* at 155.

[19] *Id.*

[20] *Id.* at 152, 153.

[21] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959).

[22] 1 SCHOENBAUM § 5-2 at 155.

[23] *Id.*

[24] *Id.* at 156.

29

rules predominate. *See* 1 Schoenbaum § 13-2 at p. 62. Even where a plaintiff does not specifically invoke admiralty jurisdiction, the "saving to suitors" clause of 28 U.S.C. § 1333(1) preserves [certain] important rights for litigants. *Sosebee v. Rath*, 893 F.2d 54, 56 (3d Cir. 1990). A party not specifically invoking admiralty jurisdiction may also seek to have state, or in this case, territorial law, applied *to the extent that such law does not conflict with admiralty law. Id.* Where Virgin Islands law merely supplements general maritime law, it may be applied;[25] however, if Virgin Islands law contradicts, or is in conflict with, the general maritime law, the respective decision or statute will be eschewed in favor of the applicable general maritime law.[26]

In this negligence action, at least four (4) areas are identified, at this time, which require examination in order to determine whether territorial law must yield or defer to maritime law. Those areas include (1) standard of care; (2) application of fault; (3) punitive damages; and (4) attorney's fees.

## STANDARD OF CARE

This case represents an action for damages based on negligence. The plaintiff asserts that the applicable rule of decision is the Restatement (Second) of Torts § 328A. The defendant, on the other hand, alleges that general maritime law controls. The elements of a maritime negligence cause of action are essentially the same as those required under the Restatement (Second) of Torts § 328 A. They include:

(1) the existence of a legal duty — the same as with the law of Restatement,

(2) a breach of that duty — analogous to a showing of "failure to conform to the standard of conduct" requirement under the law of Restatement,

(3) proximate cause — the same as with the law of Restatement, and

(4) actual loss, injury or damage — the same as with the law of Restatement.

---

[25] *Floyd v. Lykes Bros. S.S. Co., Inc.*, 844 F.2d 1044, 1047 (3d Cir. 1988).
[26] *Id.*

30

These similarities notwithstanding, with respect to the first element of proof: *to wit*; the existence of a legal duty, our analysis must embrace a comparison of the respective relevant standards of care. However, in keeping with this analysis, the court must first determine the standard of care mandated by territorial law. There are two (2) different standards of care required of owners and/or operators of common carriers, depending on the relevant body of law, *to wit*; territorial case law or the Restatements.

RESTATEMENT (SECOND) OF TORTS § 314A(1) provides as follows:

> A common carrier is under a duty to its passengers to take *reasonable action* (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

Clearly, the duty here is one of exercising reasonable care.

On the other hand, local case law has held in *Felix v. Varlack Ventures*, 12 V.I. 436, 439 (1976), that a common carrier of passengers is required to exercise an *extremely high degree* of care towards its passengers. As such, local case law has established a standard of care for common carriers that is significantly higher than that required under RESTATEMENT (SECOND) OF TORTS § 314A(1)(a), and, as such, represents a conflicting law. The Restatements are the rules of decision in the courts of the Virgin Islands *in the absence of local laws to the contrary*.[27] Consequently, with respect to the standard of care required of owners and operators of common carriers, the standard of *"extremely high"* care, as enumerated under *Felix*, constitutes the territorial standard.

Having determined the territorial standard of care applicable to this action, our inquiry turns whether the territorial (local) standard of care directly conflicts with the applicable standard of care under general maritime law. The standard of care required of owners and/or operators of vessels engaged in traditional maritime activity is one of *"reasonable care"*. *Kermarec, supra*, at p. 632. The local standard of care required of common carriers under *Felix* is therefore much higher than, *and thus conflicts with*, that required

---

[27] V.I. CODE ANN. tit. 1, § 4 (1995).

under general maritime law. As stated earlier, where Virgin Islands law contradicts, or is in conflict with, the general maritime law, the respective decision or statute is to be eschewed in favor of the applicable general maritime law. *Floyd, supra,* at p. 1047. Accordingly, this court will apply the general maritime law standard of "reasonable care" required of owners and/or operators of maritime vessels, as enumerated under *Kermarec, supra,* as the applicable standard of care in deciding whether the plaintiff has met his burden of proof.

## APPLICATION OF FAULT

Under § 1451(a) of Title 5 of the Virgin Islands Code, if a person injured by the negligence of another contributes to his own injuries through his own negligence, his recovery will be reduced in proportion to the amount of negligence attributable to the plaintiff. If the claimant is more at fault than the defendant, the claimant may not recover.

Under admiralty law, if one injured by negligence of another contributes to his own injuries through his own negligence, the doctrine of [pure] comparative negligence applies and his recovery is reduced proportionately by the percentage by which his own negligence contributed to his injury. *Schumacher v. Cooper,* 850 F.Supp. 438, 455 (1994). As such, in contrast with territorial statutory provisions, under the law of Admiralty *even if the claimant is more at fault than the defendant, he may still recover.* A judgment on damages pursuant to V.I. Code Ann. tit. 5, § 1451 which bars recovery if a plaintiff is more negligent than the defendant(s), would thus directly conflict with federal admiralty law.

There is a strong interest in maintaining uniformity in maritime law. *See, Pope & Talbot, Inc., supra,* at 409, 410. This interest would be undermined if the availability of a damage award depended upon where the plaintiff filed suit. *Sosebee, supra,* at 56, 57. Where, as here, a case arises under federal maritime law, a local statute barring recovery of damages where such damages would be recoverable under federal maritime law should not be applied. *Pope & Talbot, Inc., supra,* at 410. Accordingly, this Court will apply the pure comparative fault standard applicable under federal maritime law, instead of V.I. Code Ann. tit. 5, § 1451.

## PUNITIVE DAMAGES

Under applicable Virgin Islands law; *to wit*: RESTATEMENT (SECOND) OF TORTS § 909 (1979), punitive damages can properly be awarded against a principal because of an act by an agent if, *but only if*, (a) the principal or a managerial agent authorized the wrongful conduct, or (b) the agent was unfit and the principal was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting within the scope of employment, or (d) the principal ratified the act.

In contrast, under federal maritime law punitive damages *may not be awarded in cases of imputed fault*, because under federal maritime law a principal cannot be liable for an agent's wanton or wilful misconduct unless the principal participated in, or ratified, the wrongful conduct. *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 355 (1st Cir. 1988).

Clearly, under Virgin Islands law, punitive damages are available under circumstances that, under federal maritime law, would not allow for the award of such damages. This court remains cognizant of this Circuit's holding that where Virgin Islands law contradicts, or is in conflict with, the general maritime law, the respective decision or statute is to be eschewed in favor of the applicable general maritime law.[28] This Court will therefore apply the federal maritime law with respect to the issue of the applicability of punitive damages.

## ATTORNEYS' FEES

Under V.I. CODE ANN. tit. 5, § 541(b) (Supp. 1988), an award of attorneys' fees in a personal injury case is prohibited unless the Court finds that the complaint filed, or the defense, is frivolous. In contrast, as a general matter, attorneys' fees are not available in admiralty cases unless the court determines in its equitable discretion that one party has acted in bad faith. *Sosebee v. Rath, supra*, (citing in support *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974); *Vaughan v. Atkinson*, 369 U.S. 527, 530-31 (1962)). Thus, a general award of attorneys' fees

---

[28] *Floyd, supra*, at 1047.

pursuant to a Virgin Islands statute which does not require a finding of bad faith directly conflicts with federal maritime law. *Cf. Ocean Barge Transp. v. Hess Oil Virgin Islands Corp.*, 598 F.Supp. 45, 47 (D.V.I. 1984) (Virgin Islands statute allowing attorneys' fees should not be applied in admiralty action), *aff'd without opinion*, 760 F.2d 259 (3d Cir. 1985).[29] Accordingly, since this action is one at admiralty, and a distinction exists between the applicable Virgin Islands statute and the law of admiralty regarding recovery of attorneys' fees, this court will apply the law of admiralty to the issue of attorneys' fees so that no attorneys' fees shall be awarded, absent a showing of bad faith.

E. *There Exist Genuine Issues of Material Fact Which Preclude Partial Summary Judgment*

A well pled motion for summary judgment must comport with the requirements of *Fed. R. Civ. P.* 56. That rule requires that the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56 (c)(1987). For a dispute to be "genuine", the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, at p. 322. A Court must view the facts from the evidence submitted in the light most favorable to the non-moving party, and take the nonmovant's allegations as true. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). Summary judgment is an extreme remedy which

---

[29] A claim or defense is frivolous if a proponent can present no rational argument based upon the evidence or law in support of that claim or defense. *Liebowitz v. Aimexco, Inc.*, 701 P.2d 140, 142 (Colo. App. 1985). In contrast, the term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will. *Stath v. Williams*, 367 N.E.2d 1120, 1124 (Ind. App. 1977).

cannot be entered unless the movant has established its rights to a judgment with such clarity as to leave no room for controversy, and the other party is not entitled to recover under any discernable circumstances. *Weed, Wible and Brown, Inc. v. Mahogany Run Development Corp.*, 550 F.Supp. 1095, 1098 (D.V.I. 1982).

In support of his renewed motion, plaintiff relies on the additional evidence not before the court in its first motion for partial summary judgment; *to wit*: the final Joint Pre-Trial Order and the deposition of Juanita Lewis, the passenger who was closest to the plaintiff at the time of the instant incident. Plaintiff points to Lewis' deposition testimony where she states, " . . . the hatch was open that's why his foot went down there . . . .", as an uncontested fact that bears on the issue of liability. [Deposition of Juanita Lewis, February 20, 1998, at pp. 11 and 12]. Plaintiff also asserts as an uncontested fact, that neither Juanita Lewis, Clifton Boynes or Michael Sylvester ever stated in their respective depositions that the hatch cover was "obvious". Thus, plaintiff, having established the "breach of duty" element of his cause of action, attempts to also establish the "duty" element by arguing, essentially, that since the three principal deponents did not state that the hatch was obvious, (which would have the effect of establishing an absence of a duty requirement on the part of the defendant), it then must not have been obvious. This deductive approach to fact finding does not bespeak the presumption of reliability inherent in affirmative statements of fact appearing in a deposition and used to support a motion for summary judgment. More importantly, these contentions are not facts, but are merely inferences. Additionally, inferences drawn from evidentiary sources submitted to the Court must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Reed, Wibble and Brown, supra,* at 1098.

In opposition to Plaintiff's motion for partial summary judgment, the defendant posits two theories of defense. Defendant's principal defense is that it owed the plaintiff no duty since it did not breach its required standard of reasonable care toward plaintiff. Defendant argues that the cover of the open hatch was in plain view, and leaning against the very seats toward which the plaintiff had been looking at the time of the incident. As such, Defendant contends that no duty to warn existed, since the alleged dangerous

condition was "open and obvious". A shipowner has no duty to warn a person boarding the vessel of an open and obvious danger. *Marin v. Myers*, 665 F. 2d 57, 58 (4th. Cir. 1981).

Defendant's second, or alternative, theory of defense rests on the principle of comparative fault as providing a partial, or absolute, bar to an adjudication of liability. Defendant asserts that plaintiff was not paying attention to where he was going, and that this inattention was a significant contributing factor to this incident. In support of this assertion defendant points to the deposition testimony of the plaintiff stating that upon entering the boat he was looking on the left and on the right for a dry seat. [Deposition of Kurt Hendricks, May 14, 1996, at 23]. Defendant also cites the deposition testimony of Juanita Lewis, who stood only two (2) feet away from the plaintiff at the time of the incident, wherein which she avers that the plaintiff "was not watching where he was going . . ." [Deposition of Juanita Lewis, February 20, 1998 at 23]. Defendant asserts that plaintiff's negligent inattention to his personal well-being while boarding the boat was a significant contributing factor to his alleged injuries.

Juxtaposing the parties' respective positions, it is obvious that genuine issues of material fact remain in dispute.

## IV. CONCLUSION

In light of the foregoing, this Court concludes that: (1) it has jurisdiction to entertain this action under the "saving to suitors" clause of 28 U.S.C. § 1331(1); (2) maritime law is applicable; (3) maritime law requires a comparative analysis of local law and maritime law, and where a conflict exists, maritime law must govern; (4) genuine issues of material fact are in dispute, to wit: (a) whether the hatch was open and obvious; (b) whether plaintiff's relative awareness regarding his surroundings, at the time he was boarding the boat, was such that he should have seen a dangerous condition which was open and obvious, and if so, (c) whether plaintiff's failure to so observe constitutes a bar to recovery under the general maritime pure comparative fault standard. Because these genuine issues of disputed material facts are as yet unresolved, partial summary judgment is denied.

DATED April 26, 1999